In re Mary A. WHALEN–GRIFFIN and Robert Joseph Griffin, Debtors.

Bankruptcy No. 96–11370–JNF.

United States Bankruptcy Court,
D. Massachusetts,
Eastern Division.

March 14, 1997.

Richard Askenase, Boston, MA, Chapter 13 Trustee.

Lawrence Rudderham, Brookline, MA, for Debtors.

## MEMORANDUM

JOAN N. FEENEY, Bankruptcy Judge.

### I. INTRODUCTION

The matter before the Court is the "Trustee's Objection to Claim of Exemptions" (the "Objection"), which exemptions the Debtors claimed on Schedule C of their Schedules filed in connection with their Chapter 13 bankruptcy petition. In his Objection, the Chapter 13 Trustee stated that both Debtors claimed a homestead exemption in real property pursuant to Mass.Gen.Laws Ann. ch. 188, § 1 (West 1991 & Supp.1996) (hereinafter "M.G.L. c. 188, § 1") and that numerous claims of creditors predate the recordation of the Declaration of Homestead by the Debtors. Accordingly, the Trustee, citing *In re Van Rye,* 179 B.R. 375 (Bankr.D.Mass.1995), *aff'd,* 96 F.3d 1430 (1st Cir.1995) (no error in bankruptcy court's determination that the Chapter 7 trustee has standing to object to a

Judicial economy requires that the adversary proceeding not be bifurcated.

debtor's homestead exemption claim), stated that the exemption is ineffective against these claims. The Trustee added that any claims incurred after the recordation of the Declaration of Homestead should not receive distributions through the Debtors' Chapter 13 plan, while those incurred prior to the recordation of the homestead should be paid a dividend. The Trustee further requested the Court's guidance to resolve the issues raised by his Objection in light of the split of authority within the District of Massachusetts.

The Debtors filed a response to the Trustee's Objection, indicating that only Robert Griffin filed the Declaration of Homestead. They also asked the Court's guidance to resolve the issues raised by the Trustee's Objection in light of the significance of the issues to the practice of bankruptcy law in this jurisdiction.

The Court conducted a hearing on the Trustee's Objection on June 17, 1996. At the conclusion of the hearing, the Court, with the consent of the parties, directed them to file an Agreed Statement of Facts by July 17, 1996. After requesting and being granted a number of continuances, the parties filed a "Stipulated Set of Facts Regarding Creditors [sic] Claims" (the "Stipulated Facts") on December 16, 1996. Three days later, the Court ordered the parties to file briefs with respect to their respective positions within 30 days. Upon consideration of the Stipulated Facts and the briefs submitted by the parties, the Court now makes the following findings of fact and conclusions of law in accordance with Fed.R.Bankr.P. 7052.

## II. FACTS

The Debtors filed a voluntary petition under Chapter 13 on February 27, 1996. On Schedule A–Real Property they listed a "homestead at 45 St. Margaret, Weymouth, MA [sic]" owned solely by Robert Griffin. They indicated that the market value of Rob-

ert Griffin's interest was $100,000.00 and that there were no secured claims encumbering the property. On Schedule C–Property Claimed Exempt, the Debtors elected the state exemptions, and, in particular, M.G.L. c. 188, § 1 with respect to the real estate located in Weymouth. The Debtors listed no secured creditors on Schedule D–Creditors Holding Secured Claims. On Schedule E–Creditors Holding Unsecured Priority Claims, the Debtors listed nominal joint debts to the Internal Revenue Service and to the Massachusetts Department of Revenue each in the amount of $500.00. On Schedule F–Creditors Holding Unsecured Nonpriority Claims, the Debtors listed $128,978.10 in debt owed to 55 separate creditors. The Debtors identified 53 of the 55 obligations as credit card debts. On Schedules I and J, the Debtors listed current monthly income from social security and Veterans' Administration disability benefits of $2,895.00 and monthly expenses of $2,427.33. With monthly excess income of $467.67, the Debtors proposed a plan with a 10% dividend to unsecured creditors. The Debtors did not include the Weymouth property in the Liquidation Analysis section of their Chapter 13 plan.

In the Stipulated Facts, the Debtors and the Trustee agreed that the treatment of secured and priority claims is not an issue. Moreover, they agreed that, as of the bar date for filing proofs of claim, creditors holding claims in the amount of $79,005.35 had filed proofs of claim. Additionally, the parties agreed that Robert Griffin solely owns the property located at 45 St. Margaret Street, Weymouth and that the Declaration of Homestead was recorded on July 28, 1994.[1] The parties stipulated that the value of the Weymouth property is $100,000.00.

According to the Stipulated Facts, the Debtors testified at the § 341 meeting of creditors that "much of the outstanding debt predates the recording of the homestead exemption." In their submissions to the Court,

---

1. At the time the Chapter 13 Trustee objected to the homestead exemption, the Supreme Judicial Court had not issued its decision in *Dwyer v. Cempellin*, 424 Mass. 26, 673 N.E.2d 863 (1996). In that case, the court, liberally construing the homestead exemption, determined that a homestead was not invalid because two owners signed the declaration, stating "[a] joint declaration of homestead by husband and wife ... is valid, but only as to the declarant whose signature appears first." 424 Mass. at 31, 673 N.E.2d 863. The Trustee has not pursued this component of his original Objection.

the Debtors break down the claims for which proofs of claim have been filed into six categories: 1) claims that arose prior to the recording of the Declaration of Homestead for which the account balances have increased until the date of the filing of the petition; 2) claims that arose prior to the recording of the Declaration of Homestead for which the account balances were reduced to a lower amount after July 28, 1994 but then increased to the present balances; 3) claims that arose prior to the recording of the Declaration of Homestead for which the account balances were reduced to zero after July 28, 1994 but then increased to the present balances; 4) claims that arose prior to July 28, 1994 with no increase in the account balances after that date; 5) claims that arose after July 28, 1994; 6) claims for which detailed information necessary to categorize the claims is unavailable. The Debtors' summaries of the proofs of claim are attached to this Memorandum as Exhibits A and B. Accordingly, based upon the Stipulated Facts, the Court finds that the Debtors had debts of *at least* $21,288 as of the date of the recordation of the Declaration of Homestead.

## III. POSITIONS OF THE PARTIES

### A. *The Trustee*

In a brief statement incorporated in the Stipulated Facts, the Trustee argued that if there were any outstanding balances on claims at the time the Declaration of Homestead was recorded and if the claims were never reduced to a zero balance, then the Debtors are not entitled to any exemption for those claims. In other words, the Trustee argued that claims in categories 1 and 2 must be paid in full in this case. The Trustee also argued that the Debtors must pay the claims that fall in categories 4 and 6 in full, but he took no position with respect to the claims in category 3.

2. The Trustee is paraphrasing the requirements of 11 U.S.C. § 1325(a)(4), which provides the following:
  (a) Except as provided in subsection (b), the court shall confirm a plan if-
    (4) the value, as of the effective date of the plan, of property to be distributed under the

In his Memorandum, the Trustee modified the position he articulated in the Stipulated Facts. Citing *In re Miller*, 113 B.R. 98 (Bankr.D.Mass.1990), and *Gruet v. FDIC*, 879 F.Supp. 153 (D.Mass.1995), he indicated that categorization of debts is unnecessary as the determining factor is when the claim became a "debt contracted prior to the acquisition of said estate of homestead," *see* M.G.L. c. 188, § 1 (reproduced in full on page 8 *infra*), not when the Debtors used their credit cards. Thus, the Trustee argued that, if credit cards were issued prior to the recordation of the Declaration of Homestead, any debts contracted prior to the acquisition of the homestead are not subject to the homestead, regardless of whether new charges or payments were made. The Trustee cited *In re Cox*, 182 B.R. 626, 636 (Bankr.D.Mass.1995) ("A party extending credit under a contract relies upon the other's express promise to pay contained in the contract, not a later implied representation of intent to pay flowing from performance.... Use of the card did not create a separate contract."), and *In re Feld*, 203 B.R. 360 (Bankr.E.D.Pa.1996) (same), in support of this position.

The Trustee further argued that pre-homestead debts must be separately classified in the Debtors' Chapter 13 plan and paid as if there were no exemption. He stated the following:

 ... under state law ... a creditor whose debt was contracted pre-homestead could attach the homestead and execute against it. Where the debtor has filed a chapter 13 petition, the plan must provide that creditors would receive as much under the plan as they would in chapter 7. Thus, the trustee believes that pre-homestead debts in chapter 7 would be paid as if there were no applicable homestead exemption, and therefore the chapter 13 plan must provide for payment of at least the same amount in order to meet the "best interests" test of the Code.[2]

  plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date....
11 U.S.C. § 1325(a)(4).

Accordingly, the Trustee, citing *White v. Rice,* 87 Mass. 73 (1862), and *Clark v. Potter,* 79 Mass. 21 (1859), argued that the Debtors may be required to pay as much as 100% of their pre-homestead debt if the equity in the homestead exceeds the amount of pre-homestead debts.

### B. *The Debtors*

The Debtors, in their brief, urged the Court to follow the decision of Judge Queenan in *In re Boucher,* 203 B.R. 10 (Bankr. D.Mass.1996). They stated the following:

> The decision is a good one, based on precedent from other jurisdictions and supported by the *Owen [v. Owen,* 500 U.S. 305, 111 S.Ct. 1833, 114 L.Ed.2d 350] [ (1991) ] decision from the Supreme Court. In light of the *Owen* decision, it is very difficult to ignore the mandate of 11 U.S.C. § 522(c) when deciding on whether to apply the exception to the homestead.

Consequently, the Debtors took the position that the claimed exemption protects the real property from seizure and that they, therefore, are entitled to pay creditors a 10% dividend. In other words, they maintained that the *exception* to the exemption for pre-homestead debt under state law is inapplicable and invalid in bankruptcy cases. They also emphasized the "painful undertaking necessary to obtain detailed information on revolving charge accounts," the "tremendous cost," and the "impossible task of knowing what debt is incurred prior to recording a homestead and what debt is incurred after."

## IV. APPLICABLE LAW

### A. *Statutes*

In Massachusetts, which is not a so-called "opt-out" state, debtors retain the right to choose between federal and state exemptions. 11 U.S.C. § 522(b).[3] Under 11 U.S.C. § 522(b)(2)(A), the Debtors in the instant case elected the state homestead exemption. It provides the following:

> An estate of homestead to the extent of one hundred thousand dollars in the land and buildings may be acquired pursuant to this chapter by an owner or owners of a home or one or all who rightfully possess the premise by lease or otherwise and who occupy or intend to occupy said home as a principal residence. Said estate shall be exempt from the laws of conveyance, descent, devise, attachment, levy on execution and sale for payment of debts or legacies except in the following cases:
>
> (1) sale for taxes;
>
> (2) *for a debt contracted prior to the acquisition of said estate of homestead;*
>
> (3) for a debt contracted for the purchase of said home;
>
> (4) upon an execution issued from the probate court to enforce its judgment that a spouse pay a certain amount weekly or otherwise for the support of a spouse or minor children;
>
> (5) where buildings on land not owned by the owner of a homestead estate are attached, levied upon or sold for the ground rent of the lot whereon they stand;
>
> (6) upon an execution issued from a court of competent jurisdiction to enforce its judgment based upon fraud, mistake, duress, undue influence or lack of capacity.

For purposes of this chapter, an owner of a home shall include a sole owner, joint ten-

---

**3.** Section 522(b) provides in relevant part the following:

> (b) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (1) or, in the alternative, paragraph (2) of this section.... Such property is—
> (1) property that is specified under subsection (d) of this section, unless the State law that is applicable to the debtor under paragraph (2) of this subsection specifically does not so authorize; or, in the alternative, (2)(A) any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applica-

ble on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition, or for a longer portion of such 180-day period than in any other place; and
(B) any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law.
11 U.S.C. § 522(b).

ant, tenant by the entirety or tenant in common; provided, that only one owner may acquire an estate of homestead in any such home for the benefit of the family; and provided further, that an estate of homestead may be acquired for only one principal residence for the benefit of a family. For the purposes of this chapter, the word "family" shall include either a parent and child or children, a husband and wife and their children, if any, or a sole owner.

M.G.L. c. 188, § 1 (emphasis supplied). In *Dwyer v. Cempellin*, 424 Mass. at 29–30, 673 N.E.2d 863, the Supreme Judicial Court stated that "[t]he obvious legislative purpose of G.L. c. 188, § 1 is to protect the home from the claims of creditors for the benefit of the homestead declarant and his or her family."

Section 522(c) is crucial to the resolution of the dispute in the instant case. It provides the following:

(c) Unless the case is dismissed, *property exempted under this section* is not liable during or after the case for any debt of the debtor that arose, or that is determined under 502 of this title as if such debt had arisen, before the commencement of the case, except—

(1) a debt of a kind specified in section 523(a)(1) or section 523(a)(5) of this title; or

(2) a debt secured by a lien that is—

(A)(i) not avoided under subsection (f) or (g) of this section or under section 544, 545, 547, 548, 549, or 724(a) of this title; or

(ii) not void under section 506(d) of this title; or

(B) a tax lien, notice of which is properly filed; or

(3) a debt of a kind specified in section 523(a)(4) or 523(a)(6) of this title owed by an institution-affiliated party of an insured depository institution to a Federal depository institutions [sic] regulatory agency acting in its capacity as conservator, receiver, or liquidating agent for such institution.

11 U.S.C. § 522(c) (emphasis supplied).

### B. *Case Law*

Two recent decisions from the western division of the United States Bankruptcy Court for the District of Massachusetts have involved the state homestead exemption and the treatment of pre-homestead unsecured debt: *In re Boucher*, 203 B.R. 10 (Bankr. D.Mass.1996), and *In re Van Rye*, 179 B.R. 375 (Bankr.D.Mass.1995). Both decisions post-date the United States Supreme Court's decision in *Owen v. Owen*, 500 U.S. 305, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991). As the Debtors almost exclusively rely on the reasoning of Judge Queenan in *Boucher*, this Court shall begin its analysis with *Boucher*, a case that is indisputably "on point."

#### 1. *In re Boucher*

In *Boucher*, the court considered the issue of whether the limitation on the homestead exemption imposed by M.G.L. c. 188, § 1(2) is effective in a Chapter 7 case in light of 11 U.S.C. § 522(c). The court found that the debtor contracted at least $7,984.53 in debt prior to his acquisition of an estate of homestead.[4] The Chapter 7 trustee objected to the debtor's claimed exemption, arguing that the exemption should be disallowed to the extent of the amount of the scheduled debt in existence at the time of the declaration of homestead. The court noted that the trustee proposed to sell the property and distribute $7,984.53 to all creditors in accordance with the holding of Judge Boroff's decision in *Van Rye*.[5] 203 B.R. at 12.

The court's decision in *Boucher* hinged on its interpretation of § 522(c). The court began its analysis by noting that Congress enacted two general rules with respect to exemptions, without indicating whether the

---

**4.** The court noted that debts of other creditors may have been incurred prior to the declaration of homestead but that only seven of 30 creditors contacted by the debtor provided statements of account as of the date of the homestead declaration. 203 B.R. at 11–12.

**5.** The debtor listed his residence as having a value of $130,000.00, subject to secured debt totaling $82,585.53, leaving equity of $47,414.47. The court, citing *In re Giarrizzo*, 128 B.R. 321 (Bankr.D.Mass.1991), noted that the homestead exemption applies only to the debtor's equity in the property, not the property's total value.

rules apply only to the federal exemptions. The two rules are set forth in § 522(e) and (f) regarding waivers and in § 522(c) regarding the liability of exempt property for only certain kinds of debt. *Id.* In analyzing the language of § 522(c) and the Massachusetts homestead statute, Judge Queenan concluded that § 522(c) contained a clear command. *Id.* at 13. *See also In re Scott,* 199 B.R. 586, 592 (Bankr.E.D.Va.1996) ("[t]he statutory language [of § 522(c) ] could hardly be more clear"). In view of the pre-emptive power of Congress under its constitutional authority to establish uniform bankruptcy laws, the court determined that

> congressional approval of the use of state exemptions cannot be taken to extend to exemptions that protect debts left unprotected by section 522(c). Yet, Congress obviously wanted a debtor to have exempt property. The result is that the Debtor's election of the state exemption stands, but the state *exception* for prehomestead debts does not. Invalidating this exception to the exemption is much like voiding the waiver of a state exemption pursuant to section 522(e), notwithstanding the waiver's validity under state law.

203 B.R. at 13 (emphasis supplied).

The *Boucher* court found the interplay of state statutes that exempt property only to the extent unencumbered by security interests or other liens and section 522(f) to be particularly instructive. Thus, the court relied upon *Owen v. Owen,* 500 U.S. 305, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991), to support its position. In particular, it quoted the following language in the Supreme Court's decision:

> Just as it is not inconsistent with the policy of permitting state-defined exemptions to have another policy disfavoring waiver of exemptions, whether federal- or stated-created; so also it is not inconsistent to have a policy disfavoring the impingement of certain types of liens upon exemptions, whether federal- or state-created. We have no basis for pronouncing the opt-out policy absolute, but must apply it along with whatever other competing or limiting policies the statute contains.

*Id.* at 14 (quoting *Owen,* 500 U.S. at 313, 111 S.Ct. at 1838). Judge Queenan found that "the policy competing with the Massachusetts exception for prehomestead debts is section 522(c)." *Id.*

Existing case law supports the *Boucher* decision. In *In re Scott,* the Virginia court considered a state homestead exemption which would not prevent a creditor holding a judgment based on an intentional tort from reaching a homestead. The *Scott* court, in determining that the statute's exception was invalid, determined that it must adopt an interpretation of Virginia law that did not conflict with § 522(c). It reasoned as follows:

> This allows the states to opt out of section 522(d), as the Code expressly permits, while giving full effect to the remaining provisions of section 522 and deferring to Congress' enactments. Such a reading of the statute furthers the overall policy goals of the bankruptcy process such as ensuring uniformity under a federal distribution scheme, providing a debtor with a fresh start, and treating classes of creditors equally.

199 B.R. at 593. The court concluded that states can determine the nature and amount of property that can be exempted but not the types of debts to which the exemption applies. *See also In re Conyers,* 129 B.R. 470, 472 (Bankr.E.D.Ky.1991) ("the determination of the types of debts that remain collectible after bankruptcy from exempt property is controlled by federal rather than state law").

### 2. *Owen v. Owen*

The United States Supreme Court's decision in *Owen* is critical to an understanding of the holdings of the courts in *Boucher, Scott* and *Conyers.* In *Owen,* the United States Supreme Court considered the issue of whether a judicial lien was voidable because it impaired an exemption to which the debtor would have been entitled under subsection (b) of § 522. In *Owen,* the debtor acquired an interest in a condominium subject to a creditor's pre-existing judgment lien. Approximately a year after the debtor acquired an interest in the condominium, the condominium qualified as a homestead.

Florida law excepted judicial liens that predated the time that the property became homestead property from the homestead exemption.

The Supreme Court rejected the creditor's argument, namely that the Court need only ask whether the judicial lien impairs the exemption. The Court initially commented that "it [the lien] obviously does not, since the Florida homestead exemption is not assertable against pre-existing judicial liens." *Id.* at 309, 111 S.Ct. at 1836. The Court also added that the creditor's argument that avoidance of the lien would expand rather than preserve the exemption appeared, at first blush, to be "entirely reasonable." *Id.* at 310, 111 S.Ct. at 1836. However, the Court rejected this approach, stating that "[t]o determine the application of § 522(f) ... [courts] ... ask not whether the lien impairs an exemption to which the debtor is in fact entitled, but whether it impairs an exemption to which he would have been entitled but for the lien itself." *Id.* at 310–11, 111 S.Ct. at 1836–37. Thus, the Court determined that the hypothetical, rather than actual, state of affairs contemplated by use of the phrase "would have been entitled" in § 522(f) required courts applying § 522(f) to federal exemptions to ask first whether avoiding the lien would entitle the debtor to an exemption, and if it would, then avoid and recover the lien.

The Court then turned to the issue of whether a different construction should be applied to state exemptions. It stated the following:

> We do not see how that could be possible. Nothing in the text of § 522(f) remotely justifies treating the two categories of exemptions differently. The provision refers to the impairment of "exemption[s] to which the debtor would have been entitled under subsection (b)," and that includes federal exemptions and state exemptions alike.

*Id.* at 313, 111 S.Ct. at 1838. The Court added:

> Nor is there any overwhelming clear policy impelling us, if we possessed the power, to create a distinction that the words of the statute do not contain. Respondent [credi-

tor] asserts that it is inconsistent with the Bankruptcy Code's "opt-out" policy, whereby the States may define their own exemptions, to refuse to take those exemptions with all their built-in limitations. That is plainly not true, however, since there is no doubt that a state exemption which purports to be available "unless waived" will be given full effect, even if it has been waived, for purposes of § 522(f)—the first phrase of which, as we have noted, recites that it applies "[n]otwithstanding any waiver of exemptions."

*Id.* (citation omitted). The Court concluded its observations with the language quoted by Judge Queenan—"[w]e have no basis for pronouncing the opt-out policy absolute, but must apply it along with whatever other competing or limiting policies the statute contains." *Id.* Thus, the Court avoided the creditor's pre-existing lien under § 522(f)(1), notwithstanding Florida law limiting the scope of the homestead exemption.

### 3. *Van Rye*

In *Van Rye,* the second decision involving the same issue raised in this case, Judge Boroff initially focused on the issue of whether a Chapter 7 trustee has standing to object to a debtor's claim of homestead exemption under M.G.L. c. 188, § 1. The debtor had $39,000.00 of equity in his residence available for the homestead exemption and approximately $36,000.00 in pre-homestead debt. In finding that the trustee was a party in interest with standing to object to the debtor's claimed exemption, the court reasoned that " '[a]s the representative of the estate, trustee had a definite property interest in whether property of the debtor's estate was allowed as exempt property. The trustee had a duty to collect the property of the estate. 11 U.S.C. § 704. That duty inevitably involved determining what property was exempt.' " 179 B.R. at 378 (quoting *National Bank of Mobile v. Norris,* 701 F.2d 902, 903 (11th Cir.1983). *See also Edmonston v. Murphy,* 107 F.3d 74 (1st Cir.1997) ("the trustee, as the designated representative of the chapter 7 estate, 11 U.S.C. § 323(a), whose duties include the collection and liquidation of the nonexempt property of the es-

tate, *see id.* § 704(1), is a 'party in interest' entitled to oppose exemption claims under Bankruptcy Code § 522(1)").

The *Van Rye* court then determined, based on the parties' agreement as to the debtor's equity in the property and the amount of pre-homestead debt, that the debtor was entitled to the homestead exemption "only to the extent that his interest in the equity exceeds that pre-homestead debt." 179 B.R. at 378. Finally, the court concluded that the distribution of the "equity" representing pre-homestead debt should be ratably distributed among all creditors, not just pre-homestead creditors. *Id.* The court stated the following:

> Section 726 has no provision which would permit an earmarking of certain property of the estate for distribution in accordance with the source of its origin....
>
>     \*     \*     \*     \*     \*     \*
>
> The Court rejects the notion that the pre-homestead creditors should be given a particular priority over other unsecured creditors. Such a result would undermine the distribution scheme of the Bankruptcy Code. The pre-homestead creditors are not lien creditors; their claims would not survive a bankruptcy discharge but for the actions of the Trustee.

*Id.* at 378–79.

As Judge Queenan noted in *Boucher,* it is clear from the decision in *Van Rye* that "the parties assumed that no exemption was available against prehomestead creditors." 203 B.R. at 12 n. 2. This court must agree with that observation. The court in *Van Rye* did not discuss § 522(c) or *Owen.* Accordingly, while the decision in *Van Rye* certainly seems fair and consistent with state law, this Court cannot rely upon it for refusing to reach the same decision as the court did in *Boucher.*

Although decisions from other jurisdictions have similarly carved out exceptions from state exemptions for pre-homestead debt, none have mentioned, let alone analyzed, § 522(c) and its relation to the other provisions of § 522. In *In re Duda,* 182 B.R. 662 (Bankr.D.Conn.1995), *aff'd sub nom, Gernat v. Belford,* 192 B.R. 601 (D.Conn.1996), *aff'd,*

98 F.3d 729 (2d Cir.1996), the court considered several cases involving pre-homestead unsecured debt. It interpreted the Connecticut homestead exemption which had been enacted for the first time in legislation that was to "'take effect October 1, 1993, and shall be applicable to any lien for any obligation or claim arising on or after said date.'" 182 B.R. at 664. The court articulated the paramount issue raised by debtors' claim of a $75,000 homestead exemption as follows: "[m]ay a debtor claim the $75,000.00 homestead exemption created by Connecticut Public Act No. 93–301 when the case was commenced after the effective date of that statute (October 1, 1993), as set forth in Section 3 of the Act, but the claims of creditors arose before that date." *Id.* The court answered the question in the negative.

In a thorough decision in which the court considered case law from Connecticut and other jurisdictions, principles of statutory interpretation, the legislative history of the Connecticut statute and the Supreme Court's decision in *Owen,* the court determined, among other things, that section 522(b)(2)(A) "requires that applicable state law provide the definition of 'exempt'" and that the "debtors' property [was] therefore not exempt under applicable state law as against pre-effective date unsecured claims." *Id.* at 667. Thus, by implication, the definition of "property exempted under this section" in section 522(c) would also be provided by state law. The Connecticut court distinguished *Owen* as follows:

> *Owen* does not support the debtors' position. While federal law governs the avoidance of judicial liens pursuant to § 522(f), state law determines the availability of exemptions in the first instance where the state has opted out of the federal exemption scheme or where the debtor chooses the state scheme. Under the Supremacy Clause, any state statute which limits the availability of an exemption because of the existence of the targeted judicial lien must yield to § 522(f). The instant proceeding involves only § 522(b), which by its terms defers to state law.
>
> *Owen* involves a state law limitation based on the establishment of the target

judicial lien, whereas, in the instant cases, the limitation inheres in the state law which creates the exemption.... In *Owen*, had the judicial lien in question never existed, the debtor would have been entitled to claim the full homestead exemption. An attribute of the lien, i.e., that it attached before the property acquired homestead status, was the basis for the creditor's argument that it was not subject to avoidance.

By contrast, in these cases [sic] are no circumstances under which the debtors would have been entitled to claim a $75,000 homestead exemption because state law defined the exemption so that it was not available to these debtors on the petition date as against pre-effective date claims. Because the Act is by its terms inapplicable to unsecured claims that predate its effective date, the unavailability of the exemption does not depend upon the existence of a particular judicial lien....

Section 522(f) targets an actual prepetition judicial lien, while § 522(b)(2)(A) turns on whether the exemption is available as against unsecured creditors on the petition date.

*Id.* at 670–71 (citations omitted). The court concluded its analysis by noting that the Court in *Owen* stated " '[n]othing in [§ 522(b) ] (or elsewhere in the Code) limits a State's power to restrict the scope of its exemptions; indeed, it could theoretically accord no exemptions at all.' " *Id.* at 671 (quoting *Owen*, 500 U.S. at 308, 111 S.Ct. at 1835). Indeed, it would appear that, prior to Public Act No. 93–301, Connecticut accorded no homestead exemption at all and that fact distinguishes the case from the situation existing in the instant case. Moreover, like the court in *Van Rye*, the court in *Duda* did not address the implications of § 522(c).

In the most recent decision related to this issue posed by the Chapter 13 Trustee's objection, Judge Hillman, relying in large part on *Duda*, and *In re Streeper*, 158 B.R. 783 (Bankr.D.Iowa 1993), determined that a judicial lien securing a pre-homestead debt could not be avoided under § 522(f). In *In re Weinstein*, —— B.R. ——, Slip op. (Bankr. D.Mass. January 29, 1997), the court considered a judicial lien that secured debts contracted prior to the debtor's recordation of a homestead declaration. In discussing *Owen*, the court stated the following: "[u]nlike Florida, the exception to the homestead exemption in Massachusetts refers to 'debts' contracted prior to the declaration of homestead, not liens. Accordingly, even if I were to avoid the lien, the exception to the homestead exemption would still be applicable because [the lienholder] would continue to hold an unsecured claim pre-dating the homestead exemption." *Id.* at 5. The court distinguished *Boucher*, stating "11 U.S.C. § 522(c) ... does not conflict with the Massachusetts exception for pre-homestead debts in this case because the lien is not avoided under § 522(f)." *Id.* at 7.

This court finds that the *Weinstein* court's attempt to distinguish *Boucher* highlights the complexity of the issues involved and the seeming circularity among the various subsections of § 522. For example, if the *Weinstein* court had begun its analysis with *Boucher*, followed that decision, and determined that the provisions of § 522(c) preempted the exception to the Massachusetts homestead law regarding pre-homestead debts, then application of § 522(f) would have led to a different result, as the lien would have impaired an exemption to which the debtor would have been entitled absent the lien. Stated another way, the debtor would have been entitled to avoid the lien because it would have impaired an exemption to which he would have been entitled, namely the $100,000 homestead, without consideration of any unsecured debts contracted prior to the acquisition of the homestead. Because the court approached the issue from the perspective of § 522(f) first, however, it avoided explicitly adopting either the decision in *Van Rye* or the decision in *Boucher*.

## V. DISCUSSION

■ Notably, the language employed by Congress in § 522(c) is different than that employed in § 522(f). In § 522(c), the statute refers to "property exempted under this section," whereas in § 522(f), the statute refers to the avoidance of liens on an interest

of the debtor in property to the extent that such lien impairs "an exemption to which the debtor would have been entitled under subsection (b)." The terminology employed in § 522(f), as the Supreme Court noted, is unusual and connotes a hypothetical, rather than an actual, state of affairs. In effect, § 522(f) mandates a best case scenario approach to voiding liens that impair exemptions, without consideration of exceptions to the exemption created by state laws for liens or other encumbrances.

■ The use of the past tense, "property exempted," in § 522(c) suggests that under subsection (c) timing is important. This is particularly true in view of the general rule that exemptions are governed by the law and circumstances existing at the time the petition is filed, *see* 11 U.S.C. § 522(b)(2)(A) ("an individual debtor may exempt . . . property that is exempt . . . on the date of the filing of the petition. . . ."), and the significance of timely objections to claimed exemptions, *see* 11 U.S.C. § 522(*l*) ("[u]nless a party in interest objects, the property claimed on such list [as exempt] is exempt"). *See also* Fed. R.Bankr.P. 4003(b); *Taylor v. Freeland & Kronz,* 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992). Thus, § 522(c) appears to contemplate two time frames. The first involves a determination of what property is exempted and, thus, removed from the bankruptcy estate. The second time frame is post-discharge and post-bankruptcy. The property that either is deemed exempt or determined by the court to be exempt in the event of a timely filed objection is, at that latter point in time, *not* liable for dischargeable *and* nondischargeable debts incurred by the debtor, except those specifically set forth in § 522(c).[6] Accordingly, the reference to "under this section" may mean nothing more

than a reference to § 522(b) and debtors' ability to elect state or federal exemptions, or it may imply that property that is exempted under state law is subject to applicable state law exceptions to the exemption in addition to the exceptions outlined in § 522(c)(1)–(3). On the other hand, it arguably may refer to property exempted under subsection (d) and not under state law. In short, the issue that emerges is whether the statute compels the Court to define "property exempted" for purposes of § 522(c) after application of any applicable state law exceptions. And, if it does so compel, does the exception set forth in M.G.L. c. 188, § 1(2) conflict with § 522(c)? Applying the language of § 522(c) to the specific facts of this case, the issue is whether the "property exempted" is the full $100,000 homestead or whether it is the equity in the homestead after the amount of pre-homestead debt is deducted. If it is the latter, the effect would be a reduction in the value of the homestead that the Debtors could exempt under § 522(b), despite the discharge of *in personam* liability for that debt. This is the approach adopted by the court in *Van Rye.*

In *Van Rye,* the court determined that the estate of homestead should be reduced by the amount of the pre-homestead debt, although the pre-homestead creditors apparently had taken no steps to attach or levy on execution to satisfy their debts. This Court notes that there is support in Massachusetts case law for the approach taken by Judge Boroff. For example, in *Clark v. Potter,* 79 Mass. 21, 25 (1859), the court stated the following:

> . . . inasmuch as it appears that there are outstanding debts of the petitioner, contracted prior to the passage of the act of

---

6. In this regard, it is useful to note that § 524 defines the scope of the discharge. It provides in relevant part the following:

(a) a discharge in a case under this title—

(1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727, 944, 1141, 1228, or 1328 of this title, whether or not discharge of such debt is waived;

(2) operates as an injunction against the commencement or continuation of an action,

the employment of process, or an act to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived; and

(3) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect or recover from, or offset against property of the debtor of the kind specified in section 541(a)(2) of this title [regarding community property].

11 U.S.C. § 524(a).

1855; and as to such debts, by the terms of the act, the exemption of the homestead cannot avail. This objection is fatal to the petitioner, unless it is competent to set off a limited homestead to the party thus indebted for prior debts to a less amount than eight hundred dollars, such homestead not exceeding in value the difference between the preexisting debts and eight hundred dollars. This might be done, and seems to be the only way to carry out practically the purposes of the statute. *There are however no direct provisions authorizing such form of proceeding, and if adopted, it must be because of its fitness to give effect to the statute.* To the extent of the debts existing before the passage of the act of 1855, the homestead privilege must yield, as the assignee takes all the property of the debtor that was subject to levy of execution, and this was thus subject. But as to what remains, the homestead exemption may be still operative.

(emphasis supplied, citation omitted). *See also White v. Rice,* 87 Mass. 73, 75 (1862) ("... in case the preexisting debt is to an amount less than $800, after setting off enough to secure the payment of the actual debt having priority, the insolvent has a right to retain the residue; that is, he is entitled, although his estate is in the hands of an assignee in insolvency, to have set off to him a homestead of the value of $800, deducting the among of such prior debts.... If ... the debts due to prior creditors exhaust the whole homestead interest, they should take the same to the exclusion of the subsequent creditors....").

Likewise, in *In re Morzella,* 171 B.R. 485 (Bankr.D.Conn.1994), the court stated the following:

One California bankruptcy court permitted creditors whose claims arose prior to the effective date of an exemption statute to maintain their causes of action in the bankruptcy court by objecting to the exemption. *In re Skipwith,* 9 B.R. 730, 738 (Bankr.S.D.Cal.1981), *overruled on other grounds, In re Emmerich,* 19 B.R. 666 (9th Cir. BAP 1982). Presumably the *Skipwith* court would order payment to such creditors out of the exempted property. Anoth-

er California bankruptcy court has held that "the trustee [has] the ... power to reach for the benefit of creditors generally that portion of the increase in exemption which could be subject to levy by actual creditors holding pre-amendment claims." *In re Murillo,* 4 B.R. 612, 614 (Bankr. C.D.Cal.1980); *accord, First National Bank of Mobile v. Norris,* 701 F.2d 902, 904 (11th Cir.1983). *See also Goldsby v. Stewart,* 46 B.R. 692 (S.D.Ala.1983); *In re Perine,* 46 B.R. 695 (S.D.Ala.1983).

\*      \*      \*      \*      \*      \*

*Murillo* analyzes the method by which the amount of a nonuniform exemption should be determined. Under this method, the debtor is entitled to the exemption amount allowed by the exemption statute in effect as of the commencement of the case, minus the aggregate of all claims predating the amendment, with the aggregate limited to the amount of the increase in the exemption. *Id.* at 614. *Cf. also Swenor v. Robertson,* 452 F.Supp. 673 (N.D.Cal.1978) (pre-Code case relied upon by the *Murillo* court). The method adopted in *Murillo* was followed by another California bankruptcy court in *Gill v. Halub (In re Halub),* 25 B.R. 617, 620 (Bankr.C.D.Cal. 1982). *But see In re Rester,* 46 B.R. 194 (S.D.Ala.1984).

\*      \*      \*      \*      \*      \*

The procedural concepts adopted by courts post-Code for having the bankruptcy court administer the exempt homestead assets and distribute to the eligible creditors holding pre-amendment claims the nonexempt portion of the homestead clearly makes the most sense and is adopted by this court. It avoids the spectacle of the pre-amendment creditors rushing to be the first to attach the homestead to the exclusion of subsequent attachments. It should be acknowledged that this solution is based upon ideas advanced by Professor George M. Treister....

171 B.R. at 489.

Contrary to the approach taken in *Van Rye,* and as expressly recognized by the court in *Clark v. Potter* with respect to a predecessor statute to M.G.L. c. 188, § 1,

M.G.L. c. 188, § 1 does not explicitly provide for a reduction in the extent of the homestead to account for pre-homestead debts. Rather, M.G.L. c. 188, § 1 provides that the estate of homestead simply remains subject to attachment, levy on execution and sale for payment of debts contracted prior to the acquisition of the estate of homestead, assuming creditors with that category of debt take such steps. Under certain circumstances, such as after the expiration of the applicable statutes of limitation, pre-homestead creditors could not employ process to satisfy their pre-homestead debts. After bankruptcy, to the extent pre-homestead creditors have not obtained non-avoidable judicial liens to secure their debts, § 524(a)(2) operates as an injunction against the commencement of an action to satisfy the pre-homestead debts. Accordingly, reduction of the homestead estate by the amount of pre-homestead debt with that amount set aside for the benefit of the pre-homestead creditors, as opposed to all creditors, as in the case of *Morzella,* 171 B.R. at 489, and *Van Rye,* has the potential of resulting in a windfall to some creditors at the expense of the priority scheme set forth in 11 U.S.C. §§ 507 and 726.

As the court in *Giarrizzo,* 128 B.R. at 322, noted, the exemption is ineffective with respect to pre-homestead debt.[7] To repeat, the court in *Van Rye* assumed that the estate of homestead should be reduced by the amount of pre-homestead debt, stating "it would follow that approximately $36,000 of equity is not exempt, because the debtor is entitled to the exemption only to the extent that his interest in the equity exceeds that pre-homestead debt." *Van Rye,* 179 B.R. at 378. Is this a valid assumption? Does it not, in effect, elevate the status of pre-homestead debts by treating them as secured debt vis à vis the debtor? Would not such liens be avoidable under 11 U.S.C. § 522(f)(1)? And, is such a result within the ambit of 11 U.S.C. § 544? Clearly, *Duda* and similar cases do not squarely answer the question because in those cases the state laws creating the exemptions in the first instance (or expanding the scope of the exemption) were held to operate prospectively and § 522(c) was not considered. This Court finds that the *Van Rye* approach does in fact result in an inappropriate elevation of pre-homestead debt resulting in a treatment of all such debts as secured debts or nondischargeable debts from the vantage point of the debtor, even though the total amount of the pre-homestead debt is set aside for the benefit of the entire unsecured creditor body.

Moreover, the Court finds that § 544[8] does not provide an adequate answer to the issue posed by the interplay of M.G.L. c. 188, § 1 and § 522(c). This is so for two reasons: 1) the trustee, either as a judicial lien creditor or as a creditor with an execution against the debtor that is returned unsatisfied, has the rights and powers attributable to those creditors "at the time of the commencement of the case," which time would be after the recordation of the homestead; and 2) the recordation of a homestead is not a transfer that can be avoided by the trustee, *see Feinman v. Messia (In re Messia),* 184 B.R. 176, 177 (Bankr.D.Mass.1995).

In the Massachusetts context, the *Van Rye* approach has the effect of determining the dollar amount of the exemption, with the

---

7. In *Giarrizzo,* the court implied that the lien it avoided as impairing the debtor's exemption related to a debt that was incurred by the debtor after she recorded a declaration of homestead. Accordingly, the court did not confront the issue posed in *Boucher.*

8. Section 544(a) provides in relevant part the following:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists; (2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists. . . .

11 U.S.C. § 544(a)(1)–(2).

result that the exempt property as so valued becomes the property that is not liable for all but the specific types of debts identified in § 522(c)(1)–(3). However, commentators have noted the following with reference to the way in which state laws have defined the extent of state exemptions by prescribing that certain debts are excepted from the exemption:

> Even if the bankruptcy court honors these exceptions in theory, they probably are meaningless in practice because-absent a lien-the excepted creditor's claim will be discharged unless the claim is a debt that the Code itself excepts from discharge. The discharge will forever bar the creditor from getting satisfaction after bankruptcy, and the bankruptcy itself will pay her claim only to the extent she share in any pro rata distribution to unsecured creditors. Furthermore, a judicial lien that secures the debt is vulnerable to the debtor's avoidance under 522(f), notwithstanding the state-law exception from exemption. It might be argued, however, that the exception from exemption nevertheless entitles even the creditor without a lien, as part of the bankruptcy process to have the property applied to her debt. The argument is essentially that, *as to this creditor*, the property is not exempted, remains part of the bankruptcy estate, and should be administered for her sole benefit. This argument should fail. The effect is to exceed federal law by allowing the state to create an exception to bankruptcy discharge, or to exceed state law by forcing bankruptcy to treat the exception as a lien. In the latter case, the exception should be subject to avoidance under 522(f).

2 David G. Epstein, Steve H. Nickles and James J. White, *Bankruptcy*, § 8–9 at 476 (West 1992) (citations omitted, emphasis in the original).

■ Assuming for the sake of argument that the "property exempted under this section" means exempt property as defined by state law, namely M.G.L. c. 188, § 1, the Court must examine the ramifications of such an interpretation. In analyzing the consequences of the *Van Rye* approach, the Court notes that the language of § 522(c) is not facially ambiguous, and, thus, resort to legislative history is unwarranted.[9]

---

9. In any event, the legislative history of the Bankruptcy Reform Act of 1978 with respect to subsection (c) of 522 is sparse. The Commission on the Bankruptcy Laws of the United States recommended "that in cases under the Bankruptcy Act, the Act prescribe the exemptions available and that other state and federal laws granting or restricting exemptions be superseded." Report of the Commission on the Bankruptcy Laws of the United States, H.R.Doc., No. 93–137, 93d. Cong., 1st Sess., Pt. I, Ch. 7.1, *reprinted in* Lawrence King, et al. *Collier on Bankruptcy*, App. B, Pt. 4(c) at 4–423 (15 ed. revised 1996). The Commission explained:

> The present Act relies on state and federal law, other than the Bankruptcy Act, for a determination of what property is exempted. This was not always true; initially, federal bankruptcy legislation prescribed the exemptions. This reference to nonbankruptcy law to determine the exemptions has worked unfairly; it has, contrary to the goals of federal bankruptcy legislation, allowed some creditors to be preferred over others and causes substantial non-uniformity.
>
> \*   \*   \*   \*   \*   \*
>
> The Commission recommends that kinds of property that traditionally have been treated as exempt by state governments form the nucleus of the federal exemptions with appropriate federal maximums. This approach avoids the unfairness of existing state exemptions laws, most

of which are archaic, some of which are unduly generous, and some of which are exceedingly niggardly, particularly as to urban residents. *Id.* at 4–424. The proposed statutory changes that comprised the second part of the Commission's Report contained no section comparable to present § 522(c), although § 4–503, captioned "Exemptions," provided ". . . [p]roperty allowed as exempt under this section is exempt from creditors holding claims allowable against the debtor's estate, other than claims excepted from discharge under section 4–506(a)(6)." *Id.* at 4–694.

The Report of the Committee on the Judiciary did not accept the Commission's recommendation. While recognizing that some state exemptions schemes designed to protect debtors from being left destitute were outmoded, the Judiciary Committee stated the following:

> Recognizing . . . the [sic] circumstances do vary in different parts of the country, the bill permits the States to set exemption levels appropriate to the locale, and allows debtors to choose between the State exemptions and the Federal exemptions provided in the bill. Thus, the bill continues to recognize the States' interest in regulating credit within the States, but enunciates a bankruptcy policy favoring a fresh start.

Report of the Committee on the Judiciary, House of Representatives, to Accompany H.R. 8200,

A conflict between the state and federal statutes arises and creates an ambiguous situation when the two sets of *exceptions* are applied simultaneously because the exceptions to the Massachusetts homestead for pre-homestead debts and other categories of secured and unsecured debts overlap with the exceptions under § 522(c). Thus, to reach a proper interpretation of § 522(c) and its interplay with property exempted under Massachusetts law, a comparison of the exceptions to § 522(c) and M.G.L. c. 188, § 1 is helpful. It reveals the following:

| Section 522(c) exceptions | M.G.L. c. 188, § 1 exceptions |
| --- | --- |
| § 523(a)(1)—certain taxes and custom duties | sale for taxes |
| § 523(a)(5)—debts for alimony, maintenance or support | upon execution issued from the probate court to enforce support judgment |
| liens not avoided under §§ 522(f) and (g) and 506(d) | a debt contracted for the purchase of the home |
| liens not avoided under § 544, 545, 546, 547, 548, 549 or 724(a) | debts contracted prior to acquisition of the estate of homestead |
| tax liens | ground rent |
| nondischargeable debts under §§ 523(a)(4) and (a)(6) owed to federal depository institutions | executions to enforce judgments based on fraud, mistake, duress, undue influence or lack of capacity |

The comparison of the exceptions to the full claim of exemption under state law and under § 522(c), which limits the debts for which property exempted by the debtor may be liable, reveals a similar legislative focus, particularly with respect to taxes and debts for support. However, the exceptions to the state homestead exemption are considerably broader, involving debts that may not be excepted from discharge under 11 U.S.C. § 523(a) and for which exempt property under federal law would not be liable (for example, debts resulting from mistake or an unsecured debt contracted for the purchase of a home, and debts contracted prior to acquisition of the estate of homestead). If the Court were to consider "property exempted" under § 522(b) to be defined with reference to state law, debtors in Massachusetts claiming the state homestead exemption could see their exemption reduced considerably under the *Van Rye* approach, even before § 522(c) came into play. This would be particularly true with respect to pre-homestead debts and those incurred for spousal or child support where a debtor's homestead would be subject to multiple attacks. First the "property exempted" under state law, i.e., under § 522(b), would be reduced by the amount of the pre-homestead debt or by any execution issued from the probate court to enforce a support judgment. Under *Van Rye*, this would mean that the $100,000 exemption would be reduced by the amount of any applicable exceptions. Then, the debtor's interest in the exempt property would remain liable for potentially the same obligation under § 522(c)(1). Congress could not have intended such a multiple recovery.

This Court finds that, absent a strained reading of § 522(c), the approach adopted by Judge Queenan in *Boucher* is correct:

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. (1977), *reprinted in Collier on Bankruptcy, supra,* App. C, Pt. 4(d)(i) at 4–1214 (footnote omitted).

With respect to § 522(c) specifically, the pertinent legislative history provides that "Subsection (c) insulates exempt property from prepetition claims, except tax and alimony, maintenance, or support claims that are excepted from discharge.

The bankruptcy discharge will not prevent enforcement of valid liens." H.R.Rep. No. 595, 95th Cong., 1st Sess. 361 (1977). *See also* S.Rep. No. 989, 95th Cong., 2d Sess. 76 (1978), *reprinted in* William L. Norton, Jr. *Norton Bankruptcy Code Pamphlet 1996–1997 ed.,* at p. 494 (1996–97 ed.).

§ 522(c) of the Bankruptcy Code preempts state law with respect to defining the debts for which exempt property will be liable. In *Greenwood Trust Company v. Commonwealth of Massachusetts*, 971 F.2d 818 (1st Cir.1992), the United States Court of Appeals for the First Circuit set forth the general principles applicable to federal preemption.[10] It stated the following:

In placing constitutional theory into practice, the Court has generally distinguished between express and implied preemption....

\*   \*   \*   \*   \*   \*

Implied preemption comes in a wide variety of sizes and shapes. Indeed, we have said that "[t]he concept ... has a certain protean quality, which renders pigeonholing difficult." Implied preemption can occur when Congress constructs a scheme of federal regulation "so pervasive as to make reasonable the inference that Congress ... touch[es] a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject"; or when the goals of, and obligations imposed by, the federal law make manifest a purpose to uproot state law. Implied preemption can also occur in situations involving actual conflicts, such as when compliance with both federal and state regulation is an impossibility, or when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."

\*   \*   \*   \*   \*   \*

... in any preemption analysis, "the question of whether federal law preempts a state statute is one of congressional intent." ... [T]he different strains of preemption all operate on "the assumption that the historic police powers of the States [are] not to be superseded by [a] Federal Act unless that was the clear and manifest purpose of Congress." Courts

must tread cautiously in this arena because the authority to displace a Sovereign state's law is "an extraordinary power.... [sic] that we assume Congress does not exercise lightly." Even federal statutes that contain express preemption clauses must be viewed through the prism of this assumption.

818 F.2d at 822–23 (citations omitted).

Applying these principles to the instant case, the Court notes that, prior to the Bankruptcy Reform Act of 1978, the Bankruptcy Act of 1898 as amended through 1976 contained the following provision with respect to exemptions:

This Act shall not affect the allowance to bankrupts of the exemptions which are prescribed by the laws of the United States or by the State laws in force at the time of the filing of the petition in the State wherein they have had there [sic] domicile for the six months immediately preceding the filing of the petition, or for a longer portion of such six months than in any other State: *Provided, however,* That no such allowance shall be made out of the property which a bankrupt transferred or concealed and which is recovered or the transfer of which is avoided under this Act for the benefit of the estate, except that, where the voided transfer was made by way of security only and the property recovered is in excess of the amount secured thereby, such allowance may be made out of such excess.

Chapter III, Section Six, *reprinted in Collier on Bankruptcy,* App. Pt. 3(a) at 3–11. The provisions of the Bankruptcy Reform Act of 1978 which are set forth in § 522 represent a departure from the provisions of the Act. *See* n. 9, *supra.* Because the exceptions to the Massachusetts homestead have the same effect on the homestead as the exceptions set forth in § 522(c), this Court concludes that the Massachusetts homestead statute is preempted to the extent that it permits ex-

---

**10.** The Supremacy Clause provides the following: This Constitution, and the Laws of the United which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be made, under the Authority of the United

States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding. U.S. Const., art. VI, cl. 2.

empt property to be liable for debts other than those expressly enumerated in § 522(c)(1)–(3), particularly because the language employed by Congress in § 522(c) is devoid of ambiguity. The estate of homestead becomes liable for different types of debt under the state and federal schemes but the effect under the *Van Rye* approach is to reduce the value of the homestead, just as in the case of judicial liens. Paraphrasing the Supreme Court in *Owen,* the Court finds that nothing in the text of § 522(c) justifies treating the state and federal exemptions differently. If the Court were to deduct the amount of pre-homestead debt from the debtors' equity in the homestead, it would, in effect, be making exempt property liable for debts that are not listed in § 522(c)(1)–(3). Exempt property, whether exempted under state or federal law, can only be liable for the types of debts set forth in § 522(c). Although a state can place limits on the dollar amount of a homestead exemption, the state cannot define the exemption with reference to obligations not identified in § 522(c).

## VI. CONCLUSION

In accordance with the foregoing, the Court overrules the Chapter 13 Trustee's Objection to the homestead exemption claimed under M.G.L. c. 188, § 1. This conclusion obviates consideration of the other issues raised by the Trustee's Objection.

### EXHIBIT A

| Creditor claim # | Date Account Opened | Balance on 7–28–94 Homestead Filed | Lowest Balance Since 7–28–96 | All debt incurred After homestead Yes\No | Current Balance Proof Of Claim |
|---|---|---|---|---|---|
| CHASE claim #1 | 2–94 | 1485.30 | 513.62 | No | 1821.23 |
| AMES claim #2 | 1–94 | not available | | | 2066.57 |
| FASHION BUG claim #3 | 5–94 | not available | | | 818.48 |
| SEARS claim #4 | 8–78 | 23.09 | 00.00 | Yes | 1996.71 * * 402.84 secured |
| STERLING claim #5 | 12–89 | not available, claim duplicated by claim #10 | | | 123.59 * * secured |
| CITIBANK claim #6 | 6–94 * | 1951.15 * | 1951.15 * | No * | 5576.63 |

* the debtors dispute this claim because the entire balance of debtors account opened on 6–94 was transferred to a new account of 5–95 which means the present account would have had a zero balance on 7–28–94

| Creditor claim # | Date Account Opened | Balance on 7–28–94 Homestead Filed | Lowest Balance Since 7–28–96 | All debt incurred After homestead Yes\No | Current Balance Proof Of Claim |
|---|---|---|---|---|---|
| FILENES BASEMENT claim #7 | 5–95 * * per credit report | not available | | Yes | 497.56 |
| CITICORP claim #8 | not available | | | | 868.04 |

| | | | | | |
|---|---|---|---|---|---|
| FIRST CARD<br>claim #9 | 3–94 | 3825.94 | 3825.94 | No | 5465.03 |
| STERLING<br>claim #10 | duplicates #5 | | | | 123.59 *<br>* secured |
| AT & T<br>claim #11 | 11–91 | not available | . | | 2563.51 |
| LORD &<br>TAYLOR<br>claim #12 | 2–94 | not available | | | 1677.83 |
| HURLEY<br>LECHMERE<br>claim #13 | 12–93 | not available | | | 2211.34 |
| GREENWOOD<br>DISCOVER<br>claim #14 | 5–89 | not available | | | 4786.53 |
| FILENES<br>claim #15 | 10–94 | 00.00 | 00.00 | Yes | 1002.69 |
| CITIZENS<br>claim #16 | 11–93 | 3049.43 * | 1.08 * | No * | 3995.58 |

* the debtors dispute these amounts because a review of the accounts during this time period reveals that on the date the homestead was filed there was a zero balance. Again on 10–19–94 the account information reveals a zero balance.

| | | | | | |
|---|---|---|---|---|---|
| FIRST<br>USA<br>claim #17 | 4–94 | not available | | | 9195.21 |
| GE CAP<br>LEVITZ<br>claim #18 | 5–95 ** | not available | | | 2907.37 *<br>* 2428.96<br>secured |

** this information was not available, however the invoice attached to the proof of claim indicates the date of purchase at 5–26–95

| | | | | | |
|---|---|---|---|---|---|
| BANK<br>ONE<br>claim #19 | 2–94 | 3386.08 | 3300.32 | No | 3937.73 |
| JC PENNY<br>claim #20 | 12–93 | not available | | | 1244.88 |
| MOBIL<br>claim #21 | not available | | | | 1185.83 |

| Creditor | Date | Amount 1 | Amount 2 | | Amount 3 |
|---|---|---|---|---|---|
| FIRST CARD FCC claim #22 | 3–1–94 | 5057.64 | 4560.49 | No | 5526.36 |
| FDS MACYS JM claim #23 | 1–94 | not available | | | 1163.23 |
| FDS MACYS JM claim #24 | 5–95 * <br> * per credit report | not available | | | 294.61 |
| SEARS claim #25 | 8–94 | 00.00 | 00.00 | Yes | 2732.29 * <br> * 681.05 secured |
| NATIONAL CITY BANK Claim #26 | 1–1–80 | 00.00 | 00.00 | Yes | 319.80 |
| MBNA claim #27 | 7–94 | 5584.76 | 5584.76 | No | 13757.05 |
| BANK OF NY(DE) claim #28 | not available | | | | 4906.11 |
| IRS claim #29 | debtor will address this claim separately | | | | 7757.39 |
| PETRIE claim #30 | claim filed untimely, objection to follow | | | | |

## EXHIBIT B

| Creditor claim # | category of claim |
|---|---|
| CHASE claim #1 | category 2 |
| AMES claim #2 | category 6 |
| FASHION BUG claim #3 | category 6 |
| SEARS claim #4 | category 3, secured portion not in issue. |
| STERLING claim #5 | category 4, secured claim is not in issue |

CITIBANK
claim #6          category 1

* the debtors dispute this claim because the entire balance of debtors account opened on 6–94 was transferred to a new account of 5–95 which means the present account would have had a zero balance on 7–28–94

---

FILENES
BASEMENT
claim #7          category 6

---

CITICORP
claim #8          category 6

---

FIRST CARD
claim #9          category 1

---

STERLING
claim #10         category 4, secured claim not in issue

---

AT & T
claim #11         category 6

---

LORD &
TAYLOR
claim #12         category 6

---

HURLEY
LECHMERE
claim #13         category 6

---

GREENWOOD
DISCOVER
claim #14         category 6

---

FILENES
claim #15         category 5

---

CITIZENS
claim #16         category 2 *

* the debtors dispute these amounts because a review of the accounts during this time period reveals that on the date the homestead was recorded there was a zero balance. Again on 10–19–94 the account information reveals a zero balance.

---

FIRST
USA
claim #17         category 6

---

GE CAP
LEVITZ
claim #18         category 6, secured portion not in issue.

BANK
ONE
claim #19          category 2

JC PENNY
claim #20          category 6

MOBIL
claim #21          category 6

FIRST
CARD
FCC
claim #22          category 2

FDS
MACYS JM
claim #23          category 6

FDS
MACYS JM
claim #24          category 6

SEARS
claim #25          category 5, secured portion not in issue

NATIONAL
CITY BANK
Claim #26          category 5

MBNA
claim #27          category 1

BANK OF
NY(DE)
claim #28          category 6

IRS
claim #29          not in issue

PETRIE
claim #30          claim filed untimely, objection to follow