## CHANDLER CLARK *vs.* SAMUEL POTTER.

The proviso in the homestead act of 1857, *c.* 298, § 18, that the repeal of the *Sts.* of 1855, *c.* 238, and *St.* 1851, *c.* 340, " shall not affect any rights acquired under said acts," protects rights of homestead exemption conferred by the *St.* of 1855, *c.* 298, without their being recorded as required by *St.* 1857, *c.* 298, § 3.

An insolvent debtor, entitled to a homestead under the *St.* of 1855, *c.* 238, and owing debts contracted before the passage of that act to an amount of less than $800, is entitled to have set off to him a homestead of the value of $800, deducting the amount of such debts.

PETITION under the *St.* of 1838, *c.* 163, § 18, to this court, sitting in equity in Franklin at April term 1858, to revise a decree of the judge of insolvency, refusing to set off a homestead to the petitioner, under *St.* 1857, *c.* 298, § 17.

The land in question was of greater value than $800, and was owned and occupied as a homestead by the petitioner, who

was a householder having a family, ever since the 1st of May 1851, which was before the passage of the *St.* of 1851, *c.* 340; but his design to hold the premises as a homestead was not set forth in his deed of purchase, nor since declared by deed acknowledged and recorded. On the 2d of November 1857 proceedings in insolvency were commenced against him, and his property assigned by the judge of insolvency to the respondent. Some of the debts proved against his estate, to the amount of less than $800, were contracted before the passage of the *St.* of 1855, *c.* 238.

The petitioner claimed to be entitled to hold as a homestead, under the *St.* of 1855, *c.* 238, a part of the premises, to the value of $800, or at least that value after deducting the amount of said debts contracted before the passage · of that statute. *Dewey,* J. reserved the case, upon these facts, for the consideration of the full court, before whom it was argued at Northampton at September term 1858.

*W. Griswold & S. O. Lamb,* for the petitioner.

*C. Allen,* for the assignee. The intent of the *St.* of 1857, *c.* 298, was to revive the policy of the *St.* of 1851, *c.* 340, and require registration of the intent to hold land as a homestead in all cases. Section 3 of the *St.* of 1857, *c.* 298, expressly declares that, to entitle any estate to exemption as a homestead, it shall be set forth in the deed of purchase that it is designed to be so held ; " or, if already purchased or otherwise acquired, the said design shall be declared by writing duly sealed, acknowledged and recorded."

If the proviso in § 18, of *St.* 1857, *c.* 298, that the repeal of *Sts.* 1855, *c.* 238, and 1851, *c.* 340, " shall not affect any rights which may have been acquired under said acts," applied to rights of exemption which the debtor had without record under the *St.* of 1855, *c.* 238, it would be contrary to the general intent of the law, and the express language of § 3.

If that proviso refers to the debtor's rights of exemption at all, it refers only to such rights " acquired," that is, by purchase or descent; not to those created and conferred by law, without any act of the party or other event.

But it is rather to be confined to the rights of creditors, and perhaps those of his wife and children.    The similar proviso in the *St.* of 1855, *c.* 238, § 7, repealing *St.* 1851, *c.* 340, could not apply to rights of homestead previously existing; for they were all enlarged and increased, instead of being restricted, by the other provisions of that act.

In this case, the existence of debts contracted before the passage of the act of 1855 destroys the right of redemption.

DEWEY, J.    The premises which the petitioner seeks to have set off to him as a homestead, to be by him and his family enjoyed as such, and exempt from liability to be taken for the payment of his debts, by his assignee duly appointed under proceedings in insolvency, were owned and occupied by him as a residence, he being a householder and having a family, prior to the passage of the earliest statute exempting from levy on execution the homestead of a householder having a family, and have continued to be so occupied to the present time.    But the petitioner acquired no rights under the *St.* of 1851, *c.* 340, as he had not complied with the requirements of § 3 of that act, that such design to hold the same as a homestead should be declared by writing, duly sealed and acknowledged, and recorded in the registry of deeds.    His present claim arises under the *St.* of 1855, *c.* 238, containing much broader provisions, and creating an exemption of a homestead, without any declaration by the party of such purpose by a writing sealed, acknowledged and recorded. Under the provisions of this statute, the right existed in the petitioner to have his homestead, to the value of eight hundred dollars, exempted from liability for his debts, except such as were contracted previously to the passage of this statute.

But this statute has been repealed by *St.* 1857, *c.* 298, which has reënacted the provisions of *St.* 1851, *c.* 340, § 3, requiring a written declaration and record thereof in the registry of deeds to entitle the party to the exemption of a homestead.    The *St.* of 1857 has however a saving clause to such repeal, in these words, " provided that such repeal shall not affect any rights which may have been acquired under said acts," referring to both the previous statutes.

The questions to be settled are, whether, as to every person owning and occupying a residence as a householder and head of a family, between the periods of May 27th 1855 and June 30th 1857, the homestead right conferred by the *St.* of 1855, *c.* 238, continues in full effect; and whether, without any such declaration of purpose or record as is required by the *St* of 1857, *c.* 298, the same may be set up and enforced against all subsequent creditors or purchasers by conveyance from the husband, without the wife joining as a party to the conveyance.

On the part of the respondent, it is contended that the purpose of the statute of 1857 was to reinstate in all cases the provision for evidence of the intent to hold the property exempt as a homestead, and to confine the exemption for the future to such cases only. That it was competent for the legislature to take away this exemption, or to require those who would continue to enjoy it to record such purpose, so that the examination of the public records would give notice to a purchaser or creditor, I suppose cannot be questioned. Whether they have done so must depend upon the construction given to the proviso already quoted.

On the one hand, it may be strongly urged that as a system it would be more simple, uniform and certain to adopt the construction that it was so intended, making in all cases the registry of deeds an unfailing source of evidence of the claim of a homestead exemption by the party occupying the premises.

On the other hand, it is said that the only reasonable and practical application that can be given to this proviso is, to exempt from the operation of the *St.* of 1857 all homestead rights created by virtue of the *St.* of 1855. A similar proviso was attached to the *St.* of 1855, *c.* 238, § 7, repealing the act of 1851. Its application in that case seems very difficult, as the *St.* of 1855, by its very terms, gave a homestead in all the cases in which they were given by the *St.* of 1851, and only omitted the requisition of a written declaration and record. In the *St.* of 1857, it may have a very palpable and direct application, if we construe it as intended to reserve all homestead rights that had attached to any real estate by virtue of the ac

of 1855. Upon carefully examining the *St.* of 1855, it will be difficult to find any other rights that could have accrued thereby except the homestead exemption now claimed. The more natural and obvious construction of this proviso being that we have suggested, that of unlimited exemption from the provisions of the statute, of all homestead rights, then existing, that had been created by virtue of the *St.* of 1855, we feel required to give effect to it, thereby holding that the petitioner had a right to have a homestead exempted, as provided in the *St.* of 1855.

The further inquiry is, whether this petition can be maintained, inasmuch as it appears that there are outstanding debts of the petitioner, contracted prior to the passage of the act of 1855; and as to such debts, by the terms of the act, the exemption of the homestead cannot avail. This objection is fatal to the petitioner, unless it is competent to set off a limited homestead to the party thus indebted for prior debts to a less amount than eight hundred dollars, such homestead not exceeding in value the difference between the preëxisting debts and eight hundred dollars. This might be done, and seems to be the only way to carry out practically the purposes of the statute. There are however no direct provisions authorizing such form of proceeding, and if adopted, it must be because of its fitness to give effect to the statute. To the extent of the debts existing before the passage of the act of 1855, the homestead privilege must yield, as the assignee takes all the property of the debtor that was subject to levy of execution, and this was thus subject. *Beals* v. *Clark, ante,* 20. But as to what remains, the homestead exemption may be still operative.

The result will be that the prayer of the petition must be so far granted as to require the proper proceedings to ascertain the amount of debts existing prior to the passage of the *St.* of 1855, *c.* 238; and after that amount is deducted from eight hundred dollars, the residue is to be set off from the estate occupied by the petitioner as a homestead, and to be held and enjoyed by him and his family agreeably to the provisions of the statute.

*Decree accordingly.*