In re Kathleen M. REINDERS, Debtor.

Bankruptcy No. X91–01824S.
Contested No. 5183.

United States Bankruptcy Court,
N.D. Iowa, W.D.

March 12, 1992.

Donald H. Molstad, Sioux City, Iowa, for debtor.

A. Frank Baron, Sioux City, Iowa, for intervenors John and Carol Reinders.

Lloyd W. Bierma, Sioux Center, Iowa, for Jeffrey Reinders.

## MEMORANDUM AND ORDER RE: OBJECTION TO EXEMPTIONS AND MOTION TO AVOID LIENS

WILLIAM L. EDMONDS, Bankruptcy Judge.

The matters before the court are an objection to debtor's homestead exemption and her motion to avoid a lien against the homestead.[1] Hearing on the two motions was held January 28, 1992 in Sioux City, Iowa. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(B) and (K). The court now issues its findings of fact and conclusions of law pursuant to Fed.R.Bankr.P. 7052.

### FINDINGS OF FACT

Kathleen and Jeffrey Reinders were married on November 13, 1981. When they were first married, they resided in a home owned by Jeffrey Reinders located at 105 Oak Street in Ireton, Iowa. The Reinders sold the home in May, 1982 for $22,000.00; after paying the mortgage and costs of sale, they recovered less than

$2,000.00. The money was spent by the couple and is not involved in this dispute. After the sale, Reinders lived in a small apartment until 1983. Kerri Reinders, the couple's first child, was born January 8, 1983. It was while Kathleen was pregnant that they began to look for a larger home to accommodate their growing family.

Since before his marriage, Jeffrey Reinders has worked for Professional Nutritional Management, a division of Pro–Edge, Ltd. Sometime in the spring of 1983, David K. Smidt, Jeffrey's boss, approached him about Reinders' purchasing the Smidt home at 105—5th Street in Ireton. The details surrounding the negotiation of the sale of the residence are not totally clear. It appears that by the end of May, 1983, an agreement had been negotiated by Jeffrey under which the Reinders would purchase the Smidts' home for between $54,000.00 and $56,000.00. The Reinders were to assume a mortgage of approximately $30,000.00 held by United Federal Bank. In the face of rising interest rates, United Federal would not permit the Reinders to assume the mortgage at the Smidts' 8 per cent rate. Reinders agreed to assume the mortgage at 12.5 per cent. Kathleen Reinders testified that she was not fully aware of all of the details of the purchase until after its completion. She says that she had not been aware of the full price of the home prior to moving into it and that she had been surprised at the amount. She had presumed that the assumption of the loan and mortgage was sufficient to purchase the home without taking out an additional loan. Kathleen does not remember whether she signed an offer to buy.

The Reinders lacked approximately $26,000.00 of the purchase price. Jeffrey Reinders approached his father and mother, John and Carol Reinders, about obtaining a loan for the cash portion of the purchase price. Reinders' parents agreed to lend $30,000.00. Twenty-six thousand dollars was to be used to pay off the Smidts, and the remaining portion of the loan was to be

---

1. This case also had involved objections to debtor's exemption of household goods. Those ob-   jections have been orally withdrawn.

used to finance repairs and remodeling. The $30,000.00 from Jeffrey's mother and father was loaned in two installments— $20,000.00 on May 26, 1983 and $10,000.00 on May 31, 1983. The closing on the Smidt–Reinders sale took place May 31, 1983; the sellers executed a warranty deed on the same date. The deed was recorded on June 21, 1983. (Exhibit A–1).

On June 1, 1983, John and Carol Reinders asked Jeffrey and Kathleen to sign a promissory note for $30,000.00. (Exhibit 2). The note provided for repayment of the loan with interest at the rate of 9 per cent. Although the note called for monthly payments, it was a demand note. Jeffrey Reinders and his father each testified that this note was presented to Jeffrey and Kathleen on June 1, 1983 at the newly purchased home. Kathleen Reinders testified that although the note was signed June 1, 1983, it was signed at John and Carol Reinders' residence. The court finds that the promissory note to John and Carol Reinders was signed June 1, 1983 by Jeffrey and Kathleen Reinders after the May 31, 1983 sale closing and after the couple took possession of the property and had begun to occupy it as a home.

Kathleen says that the first time she was aware that they were borrowing $30,000.00 from her in-laws was when they presented her with the note on June 1. She did not object to the loan, and she signed the promissory note. When asked at trial why the promissory note was signed after the money was received, Jeffrey replied that the note had been signed "probably whenever we got around to it."

During most of their marriage, Kathleen had little to do with the family finances. The family's mail was delivered to a box at the post office located a block or two from where Jeffrey worked. Jeffrey picked up the mail and handled all of the family finances at his office.

During 1987, interest rates began to decline. Jeffrey and Kathleen tried to refinance their home with United Federal, but they were unable to do so. Jeffrey approached his father about obtaining a loan to pay off the United Federal mortgage.

His father agreed to lend the necessary money. The funds were to come from an account owned by R & R Investments. R & R Investments was in the business of loaning money to custom livestock feeders. The business was financed by John Reinders, but was managed by Jeffrey. According to Jeffrey's records, John Reinders loaned him $32,000.00 from the investment account in April, 1987. (Exhibits 3–6). Most of the money was used to pay off the balance on the United Federal mortgage; some was used for further remodeling work on the younger couple's home. There was no paperwork to document the loan transaction. Jeffrey testified that he gave his father either the "title" or the abstract when he received it from the bank after paying off the mortgage. Jeffrey said he believed that this would constitute his father's "hold" on the property as it could not be sold without the documents which he had given to his father. Jeffrey and John Reinders each testified that the $32,-000.00 was not a gift. Jeffrey and Kathleen continued to make monthly payments after the second loan was made, but the interest they paid annually never amounted to the full 9 per cent required by the original 1983 note. Despite receiving payments which did not keep the loan current, the parents made no effort to collect the debt or to enforce their rights until the time of their son's divorce.

The first time Kathleen learned of plans for the second family loan was during Christmas dinner of the preceding year when she overheard her husband and father-in-law discussing finances. Jeffrey testified that Kathleen knew of the plans to borrow money from his father because she knew of the plans to remodel the home and because she knew he had had the home appraised for refinancing.

Jeffrey and Kathleen were in financial difficulty by 1987. Sometime in 1987 or 1988, Jeffrey came to Kathleen with unpaid bills and their checking account book, told her they were in serious financial trouble, and asked her to see if she could straighten out their problems. At that point, Kathleen began writing the checks. Several of

the checks she wrote were for the monthly payments to John and Carol Reinders. Payments were made to the parents until November, 1989.

Jeffrey and Kathleen eventually separated, and Kathleen filed for divorce in the District Court for Sioux County. The dissolution proceeding went to trial May 14–16, 1991 and was heard by the Honorable Dewie J. Gaul. John and Carol Reinders joined in the action as intervenors to protect their interests as creditors. Kathleen did not object to the intervention.

Several days before the dissolution trial, on May 7, 1991, Jeffrey Reinders executed a real estate mortgage on the homestead to his mother and father. (Exhibit A–3). The mortgage listed $49,000.00 as the consideration thereof. The mortgage was recorded in Sioux County on May 20, 1991.

Judge Gaul issued his decision dissolving the couple's marriage on May 23, 1991. He provided for joint custody of the couple's two minor children but awarded Kathleen their physical care. Kathleen was given the right to occupy the homestead until either no child resided with her or Jeffrey's child support obligation ceased, whichever came first. When the right of occupancy terminated, the home was to be sold. The dissolution decree required Jeffrey to hold Kathleen harmless from any obligation to his parents. The court found that there remained due to the parents, by virtue of the two loans, the sum of $54,532.00—$27,800.00 from the initial loan, and $26,732.00 from the later loan.

Although the court determined that the parties had not taken sufficient steps to provide the parents with an equitable lien in the homestead, it considered that it would be inequitable to allow the sale of the homestead "without requiring that its proceeds be applied on the loans undoubtedly made in relation to it by [John and Carol Reinders]." (Exhibit 1, page 8.) Judge Gaul found not only that the couple had borrowed the initial $30,000.00 from the parents for the home, but that Kathleen knew the United Federal mortgage had been paid off and that the money had

come from Jeffrey's parents. (Exhibit 1, page 7).

Under the decree, John and Carol Reinders were granted a lien on the homestead in the amount of the debt plus interest but they were prohibited from enforcing the lien until Kathleen's right of occupancy terminated. When, upon the termination of Kathleen's right of occupancy the home was sold, the proceeds of sale were to be used to pay the costs of sale and to satisfy the lien. The balance, if any, was to be divided between Jeffrey and Kathleen. No appeal from the decree has yet been taken, but there is pending a post-trial motion by Kathleen asking the court to reconsider ownership and division of some of the household furnishings. Kathleen Reinders filed for bankruptcy on October 7, 1991. She claims her interest in the home as exempt and seeks to avoid the lien established by the decree. Jeffrey, John and Carol Reinders have objected to the claim of exemption and to her motion to avoid the lien.

## DISCUSSION

### I.

In objecting to the homestead exemption and in resisting the motion to avoid lien, Jeffrey, John and Carol Reinders make three arguments: (1) that the state court decree establishing the lien and providing for the sale of the home and the payment of the lien is pursuant to a "special declaration of statute" contrary to the homestead exemption; (2) the $30,000.00 loan used for the initial purchase of the home is a debt antecedent to the acquisition of the property as a homestead and thus under Iowa Code § 561.21(1) the homestead is liable to satisfy it; and (3) the second loan was used to pay off a purchase money loan so that the lenders succeeded to the non-avoidable purchase money lien rights of the mortgagee bank.

At the close of the creditors' case, Kathleen moved for "directed verdict" on the issue of the debtor's claim of exemption. She contends that under principles of contract law, the oral loan agreement was merged into the promissory note dated

June 1, 1983. Because the couple acquired the homestead prior to June 1, Kathleen argues that the home is exempt from the post-acquisition indebtedness. She further contends that since the home is exempt from each of the post-acquisition debts, the lien granted by the decree may be avoided pursuant to 11 U.S.C. § 522(f)(1). That section of the Bankruptcy Code provides:

[T]he debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled ..., if such lien is— ... a judicial lien....

The court, having considered the arguments, concludes that Kathleen Reinders may not claim her interest in the homestead exempt from the claims of John and Carol Reinders because the state court decree establishing their claim was entered pursuant to a statute inimical to the claim of homestead. Since the debtor's interest in the property may not be claimed as exempt from the judicial sale ordered by the dissolution decree, the lien awarded by the decree may not be avoided under § 522(f)(1).

## II.

The court's first concern is whether it has before it a justiciable controversy. In the dissolution proceeding, there is presently pending a post-trial motion under Iowa R.Civ.P. 179(b). The parties have considered that that matter is stayed by the filing of the bankruptcy. The motion requested the trial court to enlarge or amend its findings of fact and conclusions of law concerning the ownership and disposition of several pieces of furniture. The 179(b) motion made no mention of the homestead. While this motion is pending, the district court decree in the Reinders' dissolution is not final for purposes of appeal. Iowa R.App.P. 5(a). If the district court's decision to impose a lien on the homestead is appealed and reversed, the motion to avoid the lien would be moot. However, that would not relieve the bankruptcy court from its responsibility to determine whether Kathleen's interest in the homestead

would be exempt from the claims of John and Carol Reinders.

The issue of whether a judgment has become final is determined by the law of the rendering forum. *In re Levitt,* 18 B.R. 595, 598 n. 11 (Bankr.E.D.Pa.1982). The Iowa Supreme Court has stated that "[t]he purpose of a Rule 179(b) motion is to give trial court an opportunity to enlarge its findings of fact and conclusions of law and, if need be, modify the judgment or substitute the judgment with a new one. Iowa R.Civ.P. 179(b)." *Robco Transp. Co., Inc. v. Ritter,* 356 N.W.2d 497, 500 (Iowa 1984). Despite this, an Iowa district court entertaining a 179(b) motion is not free to consider issues and arguments not raised within the originally filed 179(b) motion. *Graber v. Dist. Court for Washington Cty.,* 410 N.W.2d 224, 229 (Iowa 1987) ("We have held that a late-filed amendment to a posttrial motion cannot be considered unless the ground asserted is germane to a ground in the original timely motion." *Julian v. City of Cedar Rapids,* 271 N.W.2d 707, 708 (Iowa 1978) (citing *In re Dvorak,* 213 Iowa 250, 236 N.W. 66 (1931))). The 179(b) motion in the Reinders' case deals with the division of furniture between debtor and her former spouse. It in no way impacts upon the homestead. Although the divorce decree rendered by Judge Gaul is not final for purposes of appeal to the Iowa Supreme Court, the disposition of the homestead as between the two parties and the equitable creation of a lien thereon for the benefit of John and Carol Reinders is final and would not be changed by Judge Gaul in his response to debtor's 179(b) motion.

After Judge Gaul disposes of the 179(b) motion, debtor's divorce decree proceedings may be far from over. Contrary to statement of the elder Reinders' counsel at trial, debtor's failure to raise the homestead issue in her 179(b) motion will not prevent the issue from being raised on appeal. A rule 179(b) motion is a prerequisite to an appeal only if the trial court failed to resolve a properly submitted issue. *West Branch State Bank v. Gates,* 477 N.W.2d 848, 852 (Iowa 1991), citing

*Estate of Grossman v. McCreary*, 373 N.W.2d 113, 114 (Iowa 1985). Under Iowa law, a judgment is considered final for all purposes "until set aside on appeal." *In re Lee's Estate*, 240 Iowa 691, 37 N.W.2d 296, 299 (1949). Given such finality and because this court must, in any event, decide the exemption issue, the dispute over the state court dissolution decree presents a controversy which may and should now be decided.

### III.

■ Debtor has claimed the Ireton property as an exempt homestead under Iowa Code § 561.16 and 11 U.S.C. § 522(b)(2)(A). Section 522(f)(1) of the Bankruptcy Code permits the debtor to avoid certain liens which impair debtor's exemptions; it states in pertinent part that

(f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under section (b) of this section, if such lien is— ... a judicial lien....

What constitutes a "judicial lien" is a question of federal law. *Boyd v. Robinson*, 741 F.2d 1112, 1115 (8th Cir.1984). The lien granted to John and Carol Reinders by the state court is a judicial lien within the meaning of 11 U.S.C. § 101(36). The dispute in this case centers on whether the lien impairs an exemption to which the debtor would have been entitled under state law in the absence of the lien.

■ The statute upon which debtor's claim is based is § 561.16 of the Iowa Code:

The homestead of every person is exempt from judicial sale where there is no special declaration of statute to the contrary....

The Iowa Supreme Court has long recognized that Iowa Code § 598.21, the statute which grants Iowa courts the power to make an equitable distribution of property in a divorce proceeding, "is a 'special declaration of statute' which makes the homestead laws ineffective to bar judicial sale or other disposition of the homestead in ad-

justing the parties property rights." *Kobriger v. Winter*, 263 N.W.2d 892, 894 (Iowa 1978); *In re Marriage of Tierney*, 263 N.W.2d 533, 534 (Iowa 1978). Judge Gaul ordered sale of debtor's homestead, the payment of the debt to the parents from the sales proceeds, and the imposition of the lien by his authority under Iowa Code § 598.21. The bankruptcy court will not decide whether Judge Gaul's decree was a proper exercise of his authority under § 598.21. If debtor considers the state court decree improper in that regard, she still has available her right to appeal. I conclude only that the debtor may not claim the homestead as exempt in the face of the state court decree, because § 598.21 creates an exception to the statutory prohibition against judicial sales of homesteads.

I do not believe that a different result is required by the Supreme Court's recent decision in *Owen v. Owen*, —— U.S. ——, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991). In *Owen*, the court held that a judicial lien could be avoided under § 522(f)(1) even though a state had defined the exempt property in such a way as to exclude the portion of the property encumbered by a lien. *Id.* 111 S.Ct. at 1838. Now, in applying § 522(f), bankruptcy courts must ask whether a lien impairs an exemption to which the debtor would have been entitled in the absence of the lien. *Id.* at 1836–37.

■ Certainly in this case, the Reinders' lien impairs Kathleen's claim of exemption. But even absent the lien, Kathleen would not be entitled to claim the homestead exempt from the sale ordered by Judge Gaul. Kathleen Reinders' homestead is not exempt from judicial sale not because of the lien, but because the state court has statutory authority to order it sold in a dissolution proceeding. The lien granted to the parents was certainly an impairment, but it was not the lien which destroyed the exemption. It is the state court's authority to order sale under Iowa Code § 598.21 which prevents the exemption.

I conclude that Kathleen Reinders' interest in the homestead is not exempt from the claim of John and Carol Reinders. I further conclude that the debtor, Kathleen

Reinders, may not avoid John and Carol Reinders' judicial lien in her homestead because the lien does not impair an exemption to which she would be entitled in the absence of the lien. *Contra In re Conyers*, 129 B.R. 470 (Bankr.E.D.Ky.1991), *see Matter of Macke*, 136 B.R. 209, 210 (Bankr. S.D.Iowa 1992).

Having determined that the lien is not avoidable on the foregoing grounds, the court does not reach the other arguments raised by the debtor and her creditors.

### ORDER

IT IS ORDERED that debtor's motion for directed verdict is denied.

IT IS ORDERED that creditors' objections to debtor's claim of exemption to the homestead is sustained.

IT IS ORDERED that debtor's motion to avoid creditors' lien in her interest in the real property is denied. Judgment shall enter accordingly.

SO ORDERED.