**In re Marilyn A. FRACASSO, Debtor.**

**No. 97–40065–HJB.**

United States Bankruptcy Court,
D. Massachusetts.

July 8, 1997.

George L. Reder, Pettsfield, MA, Chapter 7 Trustee.

Kirk Whitaker Jones, Barrington, MA, for debtor.

*MEMORANDUM OF DECISION*

HENRY J. BOROFF, Bankruptcy Judge.

Before the Court for determination is an "Objection to Debtor's Claim of Exemptions" (the "Objection") filed by L. George Reder (the "Trustee"), the Chapter 7 Trustee in Bankruptcy of the debtor, Marilyn A. Fracasso (the "Debtor"). The dispute arises from the Debtor's claim of a homestead exemption, pursuant to Massachusetts Gen. Laws ch. 188, § 1 (the "Homestead Statute") in her primary residence located in Smithfield, Massachusetts (the "Residence"). The Trustee objects to the exemption on the ground that all of the obligations listed in the Debtor's schedules were incurred prior to the recording of the declaration of homestead under the Homestead Statute and are therefore excepted from the exemption. In response, the Debtor contends that the exception in the Homestead Statute for debts contracted prior to the recording of the declaration of homestead is unenforceable under federal bankruptcy law pursuant to 11 U.S.C. § 522(c).

I. *Facts and Positions of the Parties*

The facts are neither complicated nor disputed. The Debtor filed a petition under Chapter 7 of the Bankruptcy Code on January 6, 1997. In her schedules, the Debtor claimed the exemptions made available pursuant to § 522(b)(2).

The Debtor has unsecured debts of approximately $6,889.42 and secured debts of $79,339.96, including a mortgage on the Residence in the amount of $64,440.96. The fair market value of the Residence is estimated to be $133,900. The Debtor's equity therein is therefore approximately $70,000. That equity exceeds the total amount of all other claims in the case, even assuming that the security for other allegedly secured claims is valueless.[1] All of the debts listed in the Debtor's schedules were incurred prior to July 31, 1996, the date the Debtor recorded

---

1. The Debtor argues, without citation, that half of the equity is also exempted as it represents her former spouse's undivided one-half interest in the property which was conveyed to her in lieu of alimony. The Court need not reach that novel question as even the remaining half of the equity exceeds all of the claims in this case.

her declaration of homestead in the Southern Berkshire Registry of Deeds. Nevertheless, the Debtor claims that the equity in the Residence is fully exempt under the Homestead Statute.

The Trustee objects to the Debtor's asserted exemption because under Mass. Gen. Laws. ch. 188, § 1 debts contracted prior to the acquisition of the homestead are excluded from its scope. Relying on the recent cases of *In re Boucher*, 203 B.R. 10 (Bankr. D.Mass.1996) and *In re Whalen–Griffin*, 206 B.R. 277 (Bankr.D.Mass.1997), the Debtor responds that § 522(c) prohibits state created debt exceptions to state exemptions. If the Court adopts the Trustee's position, all of the creditors will be paid in full. If the Court adopts the Debtor's position, all of the equity in the Residence will be exempted, resulting in no distribution to unsecured creditors. After a hearing on the Objection, the Court took the matter under advisement.

## II. *Discussion*

The fresh start which the Bankruptcy Code promises to the honest debtor is nei-ther meaningful nor possible unless the debtor emerges from the process with property minimally sufficient to sustain the debtor and the debtor's dependents. Consequently, § 522 permits a debtor to exempt certain property from property of the estate which is available for liquidation and distribution to creditors. Because the sufficiency of an exemption might be subject to considerable differences in view and perspective, Congress provided a series of options not only to debtors, but to the various states as well. Section 522(b) [2] provides several methods to facilitate those choices. Simply put, debtors may elect to choose from a list of exemptions created by Congress and set forth in § 522(d) *or* may elect to choose their exemptions from those available under state law or federal law other than § 522(d). The respective states are given the further right to "opt-out" of the § 522(d) federal exemptions, thereby limiting their citizens to only those exemptions available under state law and federal law other than § 522(d).[3] Finally, Section 522(c) [4] provides that exempt proper-

**2.** Section 522(b) provides:

Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate, the property listed in either paragraph (1) or, in the alternative, paragraph (2) of this subsection. In joint cases filed under section 302 of this title and individual cases filed under section 301 or 303 of this title by or against debtors who are husband and wife, and whose estates are ordered to be jointly administered under Rule 1015(b) of the Federal Rules of Bankruptcy Procedure, one debtor may not elect to exempt property listed in paragraph (1) and the other debtor elect to exempt property listed in paragraph (2) of this subsection. If the parties cannot agree on the alternative to be elected, they shall be deemed to elect paragraph (1), where such election is permitted under the law of the jurisdiction where the case is filed. Such property is—

(1) property that is specified under subsection (d) of this section, unless the State law that is applicable to the debtor under paragraph (2)(A) of this subsection specifically does not so authorize; or, in the alternative,

(2)(A) any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of filing of the petition, or for a longer portion of such 180–day period than in any other place; and

(B) any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law.

**3.** Approximately 34 states have exercised this opt-out power. 4 *Collier on Bankruptcy* § 522.01 (15th ed. rev.1997). Moreover, the extent of exemptions available in the opt-out states is generally less than the amount of exemptions available under § 522(d). *Id.* at § 522.02[1].

**4.** Section 522(c) provides:

Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose, or that is determined under section 502 of this title as if such debt had arisen, before the commencement of the case, except—

(1) a debt of the kind specified in section 523(a)(1) or 523(a)(5) of this title; or

(2) a debt secured by a lien that is—

(A)(I) not avoided under subsection (f) or (g) of this section or under section 544, 545, 547, 548, 549, or 724(a) of this title; and

(ii) not void under section 506(d) of this title; or

(B) a tax lien, notice of which is properly filed; or

ty, with limited exceptions, is not liable for prepetition debts.

Massachusetts has not opted-out of the federal exemptions under § 522(d). Thus, Massachusetts debtors may choose between either of the exemption schemes. For those who choose to avail themselves of the exemptions available under state law, Massachusetts provides for a homestead exemption as follows:

> An estate of homestead to the extent of one hundred thousand dollars in the land and buildings may be acquired pursuant to this chapter by an owner or owners of a home or one or all who rightfully possess the premise by lease or otherwise and who occupy or intend to occupy said home as a principal residence. Said estate shall be exempt from the laws of conveyance, descent, devise, attachment, levy on execution and sale for payment of debts or legacies except in the following cases:
>
> (1) sale for taxes;
>
> (2) for a debt contracted prior to the acquisition of said estate of homestead;
>
> (3) for a debt contracted for the purchase of said home;
>
> (4) upon an execution issued from the probate court to enforce its judgment that a spouse pay a certain amount weekly or otherwise for the support of a spouse or minor children;
>
> (5) where buildings on land not owned by the owner of a homestead estate are attached, levied upon or sold for the ground rent of the lot whereon they stand;
>
> (6) upon an execution issued from a court of competent jurisdiction to enforce its judgment based upon fraud, mistake, duress, undue influence or lack of capacity.
>
> For the purposes of this chapter, an owner of a home shall include a sole owner, joint tenant, tenant by the entirety or tenant in common; provided, that only one owner may acquire an estate of homestead in any such home for the benefit of his family; and provided further, that an estate of homestead may be acquired on only one principal residence for the benefit of a family. For the purposes of this chapter, the word "family" shall include either a parent and child or children, a husband and wife and their children, if any, or a sole owner.

Mass. Gen. Laws ch. 188, § 1. Under the statute, the exemption is ineffective in relation to debts contracted prior to the recording of the declaration of homestead. The very few Massachusetts cases which have dealt with the Homestead Statute, or its predecessor statutes with similar exceptions, have interpreted the prehomestead debt exception in accordance with its apparent plain meaning. *See Tucker v. Drake,* 93 Mass. 145, 147–48 (1865); *White v. Rice,* 87 Mass. 73, 75 (1862); *Clark v. Potter,* 79 Mass. 21, 25 (1859); *cf. In re Miller,* 113 B.R. 98, 100–04 (Bankr.D.Mass.1990). Thus, in order to determine the amount of the homestead exemption, the *Clark v. Potter* court subtracted the amount of the prehomestead debt from the dollar amount provided under the statute, and held that "the residue is to be set off from the estate occupied by the petitioner as a homestead, and to be held and enjoyed by him and his family...." 79 Mass. at 25.

The instant case is not the Court's first journey with the prehomestead debt exception to the Massachusetts Homestead Statute. In the case of *In re Van Rye,* 179 B.R. 375 (Bankr.D.Mass.1995), that Chapter 7 trustee objected to the debtor's invocation of the exemption to protect property from sizeable prehomestead debt. The debtor responded by complaining that, because the rights of the prehomestead creditors belonged exclusively to them, the estate (qua the trustee) had no standing to object. In *Van Rye,* this Court held that because a debtor is entitled to the exemption provided by the Homestead Statute only to the extent that the debtor's interest in the equity exceeds the prehomestead debt, a Chapter 7 trustee has standing to object to a debtor's exemption claim to the extent of that prehomestead debt. *Id.* at 379. In addition, the

---

(3) a debt of a kind specified in section 523(a)(4) or 523(a)(6) of this title owed by an institution-affiliated party of an insured depository institution to a Federal depository institutions regulatory agency acting in its capacity as conservator, receiver, or liquidating agent for such institution.

Court ruled that because of the requirements of the distribution scheme of the Bankruptcy Code, the portion of the equity which cannot be claimed as exempt due to the existence of pre-homestead debt must be distributed ratably among all creditors of the estate. *Id.*[5]

Three more recently issued bankruptcy court decisions in this district have now challenged some of the underlying assumptions of *Van Rye.* All base their reasoning on their perception of the effect of § 522(c) upon § 522(b). The first to raise the issue was *In re Boucher,* 203 B.R. 10 (Bankr.D.Mass. 1996). In Boucher, the court ruled that § 522(c) precluded the exclusion of prehomestead debts from the exemption provided in the Homestead Statute. *Id.* at 13. The court opined that § 522(c) was intended by Congress to limit a state's ability to create exemptions under § 522(b)(2):

> [C]ongress made exempt property liable only for certain nondischargeable debts and unavoided liens. In doing so, it expressed no deference for debts protected by state law from the state's exemptions.... In light of the clear command of section 522(c) and the pre-emptive power of Congress under its constitutional authority to establish uniform bankruptcy laws, congressional approval of the use of state exemptions cannot be taken to extend to exemptions that protect debts left unprotected by § 522(c).... The result is that the Debtor's election of the state exemption stands, but the state exception for prehomestead debts does not.

*Id.* at 12–13.

*In re Whalen–Griffin,* 206 B.R. 277 (Bankr.D.Mass.1997) ("*Griffin I*") followed *Boucher* and expanded upon its reasoning. *Griffin I* ultimately concluded, as had *Boucher,* that to the extent that the Homestead Statute permits exempt property to be liable for debts other than those expressly enumerated in § 522(c), the state law conflicts with and is therefore preempted by § 522(c).[6] 206 B.R. at 290–92. Finally, in *In re Griffin,* 208 B.R. 608 (Bankr.D.Mass.1997) ("*Griffin II*"), that court adopted and followed the reasoning of *Griffin I.*

*Boucher* and *Griffin I* interpret § 522(b) and (c) as interdependent parts of Congress' exemption plan. According to their analyses, § 522(b) defines the property subject to exemption without describing the applicability of the exemption, while the applicability of the exemption is set forth in § 522(c). *See Griffin I,* 206 B.R. at 290–92; *Boucher,* 203 B.R. at 12–13. So, § 522(b) describes the property; § 522(c) describes the debt; and both must be examined to determine the true nature of the exemption. Thus, *Boucher* and *Griffin I* hold that although a state can identify the property to be exempted, the state cannot limit the exemption by excluding debts not identified in § 522(c). *Griffin I,* 206 B.R. at 291–92; *Boucher,* 203 B.R. at 13. Other decisions have also focused on this perceived debt/property distinction. In *In re Scott,* the court held that an exception to the state homestead exemption for debts arising from intentional torts was invalid as it conflicted with § 522(c). 199 B.R. 586 (Bankr. E.D.Va.1996). The court concluded that states can determine only the nature and amount of the property that can be exempted, but not the types of debts from which the property is exempted. *Id.* at 593; *accord In re Conyers,* 129 B.R. 470, 472 (Bankr. E.D.Ky.1991) (the determination of the types of debts that remain collectible after bankruptcy from exempt property is controlled by federal rather than state law).[7]

---

5. The *Van Rye* debtor sought review from the District Court and then from the First Circuit only on the issue of the trustee's standing to object. In an unpublished opinion, the First Circuit affirmed.

6. Both *Boucher* and *Griffin I* relegate *Van Rye,* Miller and all cases with contrary holdings to occasions in which the parties or the circumstances failed to bring the § 522(c) issue before those courts. *Griffin I,* 206 B.R. at 284; *Boucher,* 203 B.R. at 12 n. 2.

7. The assertion by the *Griffin I, Scott,* and *Conyers* cases that § 522(b) relates only to property and not to debt is not consistent with analogous binding precedent in this Circuit. For example, § 522(b)(2)(B) provides that property held as either tenants by the entirety or joint tenants is exempt to the extent that such interest is exempt from process under applicable nonbankruptcy law. Since under Massachusetts law such property is subject to seizure by a creditor with a claim against both joint tenants, the First Circuit has held a debtor may not employ § 522(b)(2)(B)

This Court does not quarrel with the proposition that § 522(c) is capable of several alternative readings.[8] Nevertheless, the Court has considerable difficulty discerning the "clear command" of § 522(c) or the deference to Congress by the states which *Boucher* suggests § 522(c) demands. *See* 203 B.R. at 13; *see also Griffin I*, 206 B.R. at 291–92. The words of § 522(c) undoubtedly create a protective shield around "property exempted under this section." However, the term "property exempted" in § 522(c) is in the past tense. Therefore, this Court construes this language to mean that § 522(c) was intended to apply only after there had first been an unrestricted definition of the exemption under § 522(b).

While the legislative history relative to § 522(c) is scant, this Court's interpretation of the interplay between § 522(b) and § 522(c) is in keeping with the legislative history surrounding § 522 as a whole. Prior to the enactment of the Bankruptcy Code, debtors were limited to the exemptions available in the state of their domicile. 4 *Collier on Bankruptcy* § 522.02[1] (15th ed. rev. 1997). The change effected by § 522(b) of the Code was to create a federal scheme of exemptions yet allow the states to supplement or substitute their own exemptions for those specified in the federal statute.

Originally, the bill proposed by the House created a federal scheme of exemptions and permitted debtors to choose between state and federal exemptions (without any opt-out provision).[9] In contrast, the Senate opposed the creation of a federal scheme of exemptions and instead proposed that exemptions continue to be defined solely by state law.[10] The final version of § 522(b), of course, included both the dual federal and state exemption schemes as well as a provision allowing the states to opt-out of the federal exemptions.[11] During the Senate proceedings and debates, Senator Deconcini from

to exempt jointly held property to the extent there are joint debts. *Edmonston v. Murphy (In re Edmonston)*, 107 F.3d 74 (1st Cir.1997). Therefore, the First Circuit has looked to § 522(b) to determine both the property and debt elements of an exemption without reference to § 522(c).

**8.** *Griffin I* pronounces § 522(c) "devoid of ambiguity." 206 B.R. at 292. However, the Court notes that the opinion reaches this conclusion only after discussing three possible interpretations of the phrase "property exempted" contained in § 522(c). *Id.* at 285–86.

**9.** The legislative history of the House bill explains:

Though exemption laws have been considered within the province of state law under the current bankruptcy act, [the House bill] adopts the position that there is a federal interest in seeing that a debtor that goes through bankruptcy comes out with adequate possessions to begin his fresh start. Recognizing, however, the circumstances do vary in different parts of the country, the bill permits the states to set exemption levels appropriate to the locale, and allows debtors to choose between the state exemptions and the federal exemptions provided in the bill. Thus, the bill continues to recognize the states' interest in regulating credit within the states, but enunciates a bankruptcy policy favoring a fresh start. H.R.Rep. No. 95–595, at 122 (1977), U.S. Code Cong. & Admin. News at 5963, 6082.

\* \* \* \* \*

Subsection (b), the operative subsection of this section, is a significant departure from present law. It permits an individual debtor in a bank-

ruptcy case a choice between exemption systems. The debtor may choose the federal exemptions to which he is entitled under federal law and the law of the state of his domicile. *Id.* at 360, U.S. Code Cong. & Admin. News at 6316.

**10.** The Senate amendment to the House bill provided:

Current law is retained in the area of exempt property, which is property that the debtor may retain after bankruptcy for a fresh start. For this purpose, current law adopts the exemption law of the state in which the debtor is a resident. . . . [C]urrent law has allowed the several state legislatures flexibility to meet the needs and fresh start requirements of the debtors of their particular states. S.Rep. No. 95–989, at 6 (1978), U.S. Code Cong. & Admin. News at 5963, 5967–68.

**11.** The legislative history provides:

Section 522 of the House amendment represents a compromise on the issue of exemptions between the position taken in the House bill, and that taken in the Senate amendment. Dollar amounts specified in sections 522(d) of the House bill have been reduced from amounts contained in [the House Bill]. The States may, by passing a law, determine whether the Federal exemptions will apply as an alternative to State exemptions in bankruptcy cases. 124 Cong. Rec. § 17412 (daily ed. Oct. 6, 1978) (statement of Sen. Deconcini); 124 Cong. Rec. H11095 (daily ed. Sept. 28, 1978) (statement of Congressman Edwards).

Arizona commented that, "In the area of exemptions, it was agreed that a Federal exemption standard will be codified but that the States could at any time reject them in which case the State exemption laws would continue to prevail." 124 Cong. Rec. § 17404 (daily ed. Oct. 6, 1978). Senator Wallop also stated that:

In the area of exemptions, we have won an important victory for the rights of States to determine exemptions for the debtors of their States. Reduced Federal exemptions will be provided by the law but States by legislation may elect not to have them apply to their debtors.

*Id.* at § 17406.

Apparently, neither House had any doubt as to the power of each state to define its own state law exemptions. Nothing in the legislative history reflects any intent to place restrictions on each state's definition of such exemptions.[12] In view of Congress' undeniable power under the Supremacy Clause to do otherwise, such accedence to the preferences of the individual states cannot be easily discounted. It is clear that Congress intended to defer to the states in this area. Not only is each state given the opportunity to offer an alternative exemption scheme, but each state is further authorized to preclude the federal exemption scheme from consideration by its citizens.

12. Moreover, the legislative history of 522(c) provides:

Subsection (c) insulates exempt property from prepetition claims other than tax claims (whether or not dischargeable), and other than alimony, maintenance, or support claims that are excepted from discharge. The bankruptcy discharge will not prevent enforcement of valid liens. The rule of *Long v. Bullard*, 117 U.S. 617, 6 S.Ct. 917, 29 L.Ed. 1004 (1886), is accepted with respect to the enforcement of valid liens on nonexempt property as well as on exempt property. S.Rep. No. 95–989, at 76 (1978); *see* H.R.Rep. No. 95–595, at 361 (1977).

Thus, it appears that § 522(c) was intended only to describe the ability of creditors to collect on their debts as against already exempt property. There is no indication whatsoever that Congress intended § 522(c) as a limitation on the states' ability to define their exemptions.

13. Cases interpreting the effect of an amendment to a state exemption on debts arising prior to the amendment are analogous. *E.g., First Nat'l*

▇ In light of this indisputable legislative history, it seems to this Court far more likely that Congress intended that exemptions first be crafted in § 522(b) and then be further protected postpetition, pursuant to § 522(c), from all debts other than those specifically enumerated in § 522(c). Thus, § 522(b) is applied first to determine the exemption under either state or federal law; then § 522(c) is applied to ascertain for which debts the *exempted* property is to be liable thereafter. Nothing in the legislative history suggests that the states are precluded from excepting certain debts in defining their exemptions. Accord *In re Godfrey*, 93 B.R. 451 (Bankr. E.D.Va.1988); *In re Shines*, 39 B.R. 879 (Bankr.E.D.Va.1984); *see In re Ondras*, 846 F.2d 33 (7th Cir.1988) (no discussion of § 522(c)); *In re Schuldt*, 91 B.R. 501 (Bankr. S.D.Iowa 1988) (no discussion of § 522(c)).[13] Rather, the states are permitted to create their exemptions free from federal interference, and then have the exempt property protected from depletion by § 522(c). This interpretation does not rob the states of the power which Congress has reserved for each state's discretion.

*Boucher* and *Griffin I* found further support for their interpretations of § 522(c) in the Supreme Court case of *Owen v. Owen*, 500 U.S. 305, 111 S.Ct. 1833, 114 L.Ed.2d 350

*Bank of Mobile v. Norris*, 701 F.2d 902, 905 (11th Cir.1983); *In re Perine*, 46 B.R. 695 (S.D.Ala. 1983); *In re Duda*, 182 B.R. 662 (Bankr.D.Conn. 1995), *aff'd sub nom. Gernat v. Belford (In re Gernat)*, 98 F.3d 729 (2d Cir.1996); *In re Porter*, 182 B.R. 53 (Bankr.M.D.Fla.1994); *In re Morzella*, 171 B.R. 485 (Bankr.D.Conn.1994); *Gill v. Halub (In re Halub)*, 25 B.R. 617 (Bankr.C.D.Cal. 1982). In *Duda*, the court held that upon the enactment of a state homestead statute, the exemption could not be claimed as against debts that arose before the effective date of the homestead statute. The court explained "nothing in section 522 suggests that the state cannot determine exemptions according to the date the debts were incurred, i.e., allow different amounts for the exemption fixed by the date of the debts, if that is state law at the time the petition is filed." 182 B.R. at 671. The court explain that the state legislature "drafted the Act so that the scope of the homestead exemption would be restricted in that it would not apply to preexisting debts. That restriction does not conflict with federal law and thus must be applied in these cases." *Id.* (no discussion of § 522(c)).

(1991). In *Owen*, the Court held that the proper methodology for determining whether a lien could be avoided under § 522(f) was to ascertain whether the debtor would have been entitled to the exemption but for the lien itself. 500 U.S. at 310–11, 111 S.Ct. at 1836–37. If, absent the lien, the debtor would have been entitled to the exemption under state law then the lien might be avoided. *Id.* at 311–12, 111 S.Ct. at 1836–37.

*Owen* is inapposite to the instant facts. In addition, in *Owen* the Court declared "nothing in subsection (b) (or elsewhere in the Code) limits a State's power to restrict the scope of its exemptions; indeed, it could theoretically accord no exemptions at all." *Id.* at 308, 111 S.Ct. at 1835. It is important to recognize that although the *Owen* Court certainly had the opportunity to find that states did not have the authority to define their exemptions to except liens, the Court did not choose that option.[14] Instead, the Court looked to the words of § 522(f) and crafted a methodology to determine whether the lien should be avoided in light of the state exemption. Thus, the Court still employed the state law definition of exemptions to determine the applicability of § 522(f).

■ Finally, other considerations and contraindications are deserving of mention. First, *Griffin I* argues that allowing the states to define exemptions with reference to debts in some way elevates the excepted creditor claims to secured or nondischargeable status, 206 B.R. at 288, and/or subjects debtors owning exempt property to a

doubling of liability, *id.* at 290. These contentions are considerably overstated. In bankruptcy, unless a claim is secured, nondischargeable, or treated in a reorganization plan, it does not independently survive. The Homestead Statute merely specifies the exemption to which *a debtor* is entitled. Creditor rights are not defined. The prehomestead claims excepted from the Homestead Statute give their holders no greater rights than those of any other creditor in a bankruptcy case. *Van Rye*, 179 B.R. at 378–79; *Schuldt*, 91 B.R. at 503. Instead, the debtor's nonexempt property interests remain in the estate for distribution to all creditors in accordance with the distribution scheme set forth in the Bankruptcy Code. *Id.* But see *In re Bush*, 196 B.R. 378, 380 (Bankr.W.D.Ky.1995) (nonexempt property administered for benefit of all creditors whose debts arose prior to acquisition of the homestead); *Morzella*, 171 B.R. at 489; *Godfrey*, 93 B.R. at 453; *Shines*, 39 B.R. at 882.

Second, this Court is uncomfortable with the realization that if the *Boucher* and *Griffin I* reading of § 522(c) is accurate, the same Homestead Statute provides certain rights to debtors before bankruptcy and different rights thereafter. Although it is common for state law rights to be impacted by a bankruptcy filing, in this instance the impact is within a context in which Congress clearly intended state and not federal law to apply. Furthermore, with the change made by

---

**14.** Some courts have construed *Owen* to mean that the exclusion of certain liens from the scope of a state exemption is impermissible. *Resolution Trust Corp. v. Moreland (In re Moreland)*, 21 F.3d 102, 106 (6th Cir.1994); *Braverman v. Provident Bank (In re Braverman)*, 150 B.R. 681, 684 (Bankr.S.D.Ohio 1993) (court's task is to determine the boundary on state action regarding exemptions that *Owen* delineates); *Boucher*, 203 B.R. at 14 (*Owen* "disapproved the decisions denying section 522(f) avoidance rights. As the [Supreme] Court saw it, such decisions essentially nullify section 522(f)"); *see Scott*, 199 B.R. at 594.

Other courts do not read *Owen* as broadly. Instead, the courts focus on the formula set forth in *Owen* for determining whether the lien may be avoided. *E.g., Tower Loan of Mississippi, Inc., v. Maddox (In re Maddox)*, 15 F.3d 1347, 1351 (5th Cir.1994); *Duda*, 182 B.R. at 670; *Nicholas v.*

*Tower Loan of Mississippi, Inc., (In re Kennedy)*, 139 B.R. 389, 396–97 (Bankr.N.D.Miss.1992); *In re Kelly*, 133 B.R. 811, 813 (Bankr.N.D.Tex. 1991); *Shearer v. Crestar Bank (In re Shearer)*, 132 B.R. 313, 315 (Bankr.W.D.Va.1991); *Conyers*, 129 B.R. at 473. Consequently, if state law does not entitle the debtor to the exemption even in the absence of the lien, the lien is not avoided. *Duda*, 182 B.R. at 670–71; *In re Streeper*, 158 B.R. 783, 788 (Bankr.N.D.Iowa 1993) (since debtor was not entitled to exemption under Iowa law for debt contracted prior to acquisition of homestead, debtor would not be entitled to exemption even in absence of lien, and therefore lien was not avoidable under § 522(f)); *see In re Reinders*, 138 B.R. 937, 942 (Bankr. N.D.Iowa 1992) (*Owen* does not require a different result because "even absent the lien, [the debtor] would not be entitled to claim the homestead exempt").

Boucher *and* Griffin I, *the Homestead Statute is by no means similar to that intended by the Massachusetts Legislature. If the Legislature had intended to afford debtors a $100,000 blanket exemption for the equity in their primary residences, it could have done so. It may be willing to do so now. But* Boucher *and* Griffin I *either presume (without support) the Legislature's willingness to tolerate the change in the statute or intend to impose an amendment of the statute without such a presumption. If the latter is true, how can the Homestead Statute be any longer characterized as state created? This problem is more than just semantic. There are serious state policy issues at play; for example, credit markets may be affected by this revision of the state statute. The natural creditor reaction to this broad reading of § 522(c) will undoubtedly be a discontinuation of unsecured credit and a concomitant replacement with consumer secured credit. What could be perceived as an apparent victory for some bankruptcy debtors may prove bitter sweet for others.*

Third, it is as yet unclear how *Boucher* and *Griffin I*'s interpretation of § 522(c) will impact decisions within this district which express reservations relative to the timing of the conversion of nonexempt assets to exempt assets. In *Miller,* 113 B.R. at 105, and *In re Messia,* 184 B.R. 176, 178 (Bankr. D.Mass.1995), the courts ruled that the conversion of nonexempt assets to exempt assets was not a "transfer" within the meaning of § 544. *See Van Rye,* 179 B.R. at 377. However both *Miller* and *Messia* declined to opine on whether such a conversion might be improper in other contexts. If those courts intended to reserve the right in appropriate cases (e.g., the recording of the declaration of homestead on the eve of bankruptcy) to dismiss a case for lack of good faith, void the declaration, or bar discharge where appropriate, a very unpleasant surprise might await those debtors who might not have filed their cases absent the perceived protection of the court-revised Homestead Statute. To some debtors, *Boucher* and *Griffin I* will present an irresistible temptation to record a declaration of homestead at any time, including on the eve of bankruptcy. Counsel to such debtors may be hard pressed not to recom-

mend such action. However, it is still not clear whether even the *Boucher, Griffin I* and *Griffin II* courts will tolerate a retroactive improvement of a debtor's rights effectuated shortly before a bankruptcy filing or how the court will be perceived by a creditor public experiencing a sudden retroactive deterioration of its rights.

## III. *Conclusion*

This Court disagrees with the interpretation of § 522(c) offered by *Boucher, Griffin I,* and *Griffin II,* and holds that § 522(c) does not restrict the right of the Commonwealth of Massachusetts, as reserved to the states by Congress, to craft its Homestead Statute with an exception for prehomestead debts.

The Objection filed by the Trustee to the Debtor's exemption of her residence is sustained. A separate Order will issue in conformity with this Memorandum.